ESTATE OF MAGGIE M. HOLDING, DECEASED, WILLIS A. HOLDING, SR., AND MILDRED HOLDING STOCKARD, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65341.   Filed July 31, 1958.

*Daniel R. Dixon, Esq.*, for the petitioner.
*Thomas E. Tyre, Esq.*, for the respondent.

The Commissioner has determined a deficiency in the estate tax of the Estate of Maggie M. Holding of $15,645.55. The deficiency is due to the addition to the estate reported on the return of $61,000 explained in the deficiency notice, as follows:

EXPLANATION OF ADJUSTMENTS

Schedule G

| Gifts made in 1952 and 1953 to | Returned | Determined |
| --- | --- | --- |
| Willis Holding, Jr | $0.00 | $11,000.00 |
| Bernice Y. Holding | 0.00 | 3,000.00 |
| John N. Holding | 0.00 | 11,000.00 |
| Doris M. Holding | 0.00 | 3,000.00 |
| H. Jerome Stockard | 0.00 | 11,000.00 |
| Gene M. Stockard, Jr | 0.00 | 3,000.00 |
| Mildred H. Stockard | 0.00 | 9,000.00 |
| H. Jerome Stockard, Sr | 0.00 | 3,000.00 |
| Bessie Price | 0.00 | 6,000.00 |
| Willis Holding, Sr | 0.00 | 1,000.00 |
| Total | $0.00 | $61,000.00 |

The transfers listed above are included in decedent's gross estate pursuant to Section 811 (c) of the Internal Revenue Code, as amended, as gifts made in contemplation of death or in lieu of a testamentary disposition of a part of her estate.

Petitioner, the Estate of Maggie M. Holding, deceased, contests the foregoing adjustment by an appropriate assignment of error. At the hearing petitioner, in an amendment to petition, assigned an additional error as follows:

(5) Respondent erred by failing to allow as an additional deduction from the gross estate of the decedent those expenses and costs incurred by the petitioners for attorney's fees and other expenses in defending said estate against the assessment of additional federal estate taxes and state inheritance taxes.

### FINDINGS OF FACT.

Part of the facts have been stipulated and are incorporated herein by this reference.

The decedent, Maggie M. Holding was born on November 4, 1865, and for the last 50 years preceding her death lived in the family residence in Raleigh, North Carolina.

Decedent's United States estate tax return was filed with the district director of internal revenue, Greensboro, North Carolina, on December 13, 1954. This return showed a net estate of $34,655.54, after deducting the specific exemption of $60,000, and an estate tax due of $3,838.

In 1952 and prior thereto, decedent owned some acres of farmland in Wake County, North Carolina, just outside the city of Raleigh. This land was sold in August 1952 to J. W. York, et al. The date of the conveyance was August 18, 1952. At the time it was sold this farmland was not profitable or income producing. It was known to be valuable property, however, because of its proximity to the city of Raleigh. The decedent acquired the land in question as a result of a foreclosure under a mortgage and sale of such property in 1936. The land had been owned by her son, Hubert R. Holding, Sr., who died in 1922. The decedent had purchased the farm for her son, Hubert, Sr., and took the mortgage on the property as security. The sale of the land owned by decedent (64.07 acres) to York et al. was contingent upon York et al. acquiring the contiguous tracts owned by decedent's son, Willis A. Holding, Sr., and her grandson, Hubert R. Holding, Jr. The land was sold for $2,000 per acre, the gross proceeds being received as follows:

| | Amount | Number of acres |
|---|---|---|
| Maggie M. Holding (decedent) | $128,140 | 64.07 |
| Willis A. Holding, Sr. (son) | 25,900 | 12.95 |
| Hubert R. Holding, Jr. (grandson) | 19,000 | 9.50 |
| Total | 173,040 | |

The land sold to J. W. York et al. by Hubert R. Holding, Jr., through his guardian was inherited by him from his father, Hubert R. Holding, Sr. These acres were inadvertently omitted from the mortgage executed to decedent by Hubert R. Holding, Sr., on June 1,

1922. The mortgage was purportedly to cover all of the land owned by Hubert R. Holding, Sr. As a result of the inadvertent omission, the subsequent foreclosure by decedent did not include the 9.50 acres which were consequently inherited by Hubert, Jr. In making the subsequent gifts to her grandchildren, decedent took this factor into consideration and made no gifts to Hubert R. Holding, Jr. The omission of these properties took place in 1936 but was not discovered until the time the land was sold in 1952 and title papers were being prepared.

The gross proceeds from the sale of land received by the decedent in the amount of $128,140 were deposited in her account at Wachovia Bank and Trust Company, Raleigh, North Carolina, on August 21, 1952.

In September and October of 1952 and in February of 1953, decedent made 17 gifts of cash to her children, grandchildren, and the widow of a deceased son who had remarried, through the medium of checks drawn on her account at the Wachovia Bank and Trust Company, Raleigh. The checks were in the handwriting of the decedent and were made payable to the donees, and bore the dates and amounts as indicated in the following listing:

| Date of check | Payee | Marking | Amount |
|---|---|---|---|
| Sept. 10, 1952 | Mildred H. Stockard | (From corpus) | $6,000 |
| Sept. 10, 1952 | Mildred H. Stockard | (General) | 3,000 |
| Sept. 10, 1952 | H. J. Stockard, Sr | | 3,000 |
| Sept. 10, 1952 | John N. Holding | (From corpus) | 6,000 |
| Sept. 10, 1952 | John N. Holding | (General) | 3,000 |
| Sept. 10, 1952 | Doris Holding | (General) | 3,000 |
| Sept. 10, 1952 | Willis A. Holding, Jr | (From corpus) | 6,000 |
| Sept. 10, 1952 | Willis A. Holding, Jr | (General) | 3,000 |
| Sept. 10, 1952 | Bernice Holding | (General) | 3,000 |
| Sept. 9, 1952 | H. J. Stockard, Jr | (From corpus) | 6,000 |
| Sept. 9, 1952 | H. J. Stockard, Jr | (General) | 3,000 |
| Sept. 10, 1952 | Eugenia M. Stockard | (General) | 3,000 |
| Oct. 14, 1952 | Bessie L. Price | (Corpus) | 6,000 |
| | Total for 1952 | | 54,000 |
| Feb. 6, 1953 | H. J. Stockard, Jr | (For Jerry—birthday) | 2,000 |
| Feb. 12, 1953 | Willis A. Holding, Sr | (Birthday) | 1,000 |
| Feb. 14, 1953 | John N. Holding | (House) | 2,000 |
| Feb. 14, 1953 | Willis Holding, Jr | (House) | 2,000 |
| | | | 7,000 |
| | Total for 1952 and 1953 | | 61,000 |

The relationship of the various donees to the donor-decedent is as follows: Mildred H. Stockard is the daughter of the decedent; H. J. Stockard, Sr., is the husband of Mildred H. Stockard; Willis A. Holding, Sr., is the son of the decedent; Willis A. Holding, Jr., is a grandson of the decedent; Bernice Holding is the wife of Willis A. Holding, Jr.; John N. Holding is a grandson of the decedent and is a son of Willis A. Holding, Sr.; Doris Holding is the wife of John N. Holding; H. J. Stockard, Jr., is a grandson of the decedent; Eugenia M. Stockard is the wife of H. J. Stockard, Jr.; and Bessie L. Price,

formerly Bessie Holding, is the surviving wife of Hubert Holding, Sr., who is a deceased son of the decedent, Maggie M. Holding.

A Federal gift tax return, Form 709, was filed by decedent for the year 1952 on February 24, 1953, with the office of the now district director of internal revenue, Greensboro, North Carolina, disclosing gifts of $54,000. From this total of $54,000 in gifts, nine exclusions of $3,000 each, totaling $27,000 were taken. This left "Total included amount of gifts for year $27,000.00." From this $27,000 was deducted "Specific exemption claimed, $27,000.00." This resulted in "Amount of net gifts for year, None." Therefore, no gift tax was paid for 1952. The record does not disclose the filing of any gift tax return for 1953.

Decedent prepared her holographic last will and testament on August 20, 1952. She died on September 16, 1953, at the age of 87. The primary beneficiaries under the decedent's will were her two surviving children, Willis A. Holding, Sr., and Mildred Holding Stockard. The estate was distributed under the will as follows:

| | |
|---|---|
| Mildred Holding Stockard (daughter) | $34,589.02 |
| Willis A. Holding, Sr. (son) | 41,992.12 |
| Willis A. Holding, Jr. (grandson) | 3,149.22 |
| John N. Holding (grandson) | 3,149.23 |
| Hubert R. Holding, Jr. (grandson) | 3,149.22 |
| H. Jerome Stockard, Jr. (grandson) | 3,149.23 |
| Arthur Newton Holding (grandson) | 4,877.50 |
| Others | 600.00 |
| Total | 94,655.54 |

The assets and liabilities constituting the adjusted gross estate of the decedent as shown on the estate tax return were as follows:

| | |
|---|---|
| Real estate | $45,800.00 |
| Bonds | 4,877.50 |
| Cash in banks | 44,770.74 |
| Other property | 1,000.00 |
| Gross estate | 96,448.24 |
| Liabilities | 1,792.70 |
| Adjusted gross estate | 94,655.54 |

During her last illness decedent was treated at Rex Hospital, Raleigh, North Carolina. Decedent was admitted to Rex Hospital on July 19, 1953, and was discharged therefrom on August 26, 1953. Petitioner died shortly thereafter on September 16, 1953. The first noticeable symptoms of decedent's last illness occurred within a period of approximately 1 month prior to her admission to Rex Hospital on July 19, 1953, in the form of nausea, vomiting, and indigestion. Decedent did not consider these symptoms as indicative of a serious illness and objected to being hospitalized. However, her family physician insisted that she go into the hospital for observation and treatment and she did so.

Prior to her last illness decedent had enjoyed excellent health for many years. Petitioner was an unusually active and vigorous person for one of her age, both mentally and physically. She could read without her glasses and continued to conduct her business and personal affairs and work in her home and yard until her last illness. During the last 8 to 10 years of her life decedent's family physician gave her a periodic checkup at irregular intervals of about twice a year and occasionally treated her for minor ailments. These checkups disclosed no serious illness and members of decedent's family and her family physician were unaware of any serious illness until she was ordered to go to the hospital on or about July 17, 1953, by her physician. Upon admission to Rex Hospital on July 19, 1953, decedent was subsequently found to be suffering from an incurable malignancy which resulted in her death on September 16, 1953.

At the time the gifts were made in September and October of 1952 and in February of 1953, the decedent was enjoying good health. At these times, the malignancy was either nonexistent or had not manifested any symptoms. The first knowledge of any symptoms of illness appeared approximately 1 month before admission to Rex Hospital.

Decedent made a practice of giving substantial gifts of money to her children and grandchildren and their spouses on frequent occasions. Decedent, on birthdays, holidays, Christmas, and other occasions would make money gifts of $25 to $100 to each of them. On special occasions these gifts were as large as $500 or $1,000. The gift made to Jerry in 1953 in the amount of $2,000 was made on his birthday, and the check by which the gift was made was marked "(For Jerry—Birthday)" by the decedent. The gift made to Willis, Sr., in 1953 in the amount of $1,000 was made on his birthday and the check was marked "(Birthday)" by the decedent. Decedent also paid a large and substantial portion of the expenses her grandchildren incurred in acquiring their respective college educations.

At the time of her death, decedent had an independent annual gross income of approximately $10,000 and a net taxable income of approximately $6,000. Decedent was receiving approximately $4,400 annually in dividends from a trust fund at her death and approximately $6,000 annually in gross rentals from various properties at the time of her death.

At the time of her death decedent owned $44,770.74 in cash in the form of bank deposits.

Decedent made a practice of frequently rewriting her will without legal assistance and in her own handwriting whenever an occasion would seem to justify such action. She had followed this practice for many years before her death.

Decedent was advised on several occasions by her tax adviser not to sell the land in question for the reason that said sale would result in

incurring high income tax for both Federal and State income tax purposes. He also advised her not to sell for the further reason that because of her advanced years an estate tax problem would also be created if she gave away the proceeds of sale and died within 3 years thereafter.

Decedent proceeded to sell the land against the advice of her tax adviser. Petitioner paid income tax to the Federal Government for 1952 in the total amount of $30,148.01. Of this amount, $29,353.67 was attributable to the gain on the sale of the land which was sold. Petitioner paid income tax to the State of North Carolina for 1952 in the total amount of $7,974.83. Of this amount, approximately $7,826.31 was attributable to the sale of the land. Accordingly, decedent paid a total of $37,179.98 in income taxes on the land sale.

Decedent deplored the practice of some of her associates of keeping their wealth until they died. She believed in sharing what she had with her descendants while she was alive to see them enjoy it and she practiced that belief.

None of the gifts made by decedent in 1952 and 1953 aggregating the sum of $61,000 was made by decedent in contemplation of death or in lieu of testamentary disposition. The dominant motive which prompted decedent to make the several gifts,in question to her children, grandchildren, and daughter-in-law was to see them enjoy the use of the money given to them while she was yet living.

OPINION.

BLACK, *Judge:* The Commissioner, in his determination of the estate tax deficiency against the Estate of Maggie M. Holding, deceased, has determined that gifts which she made to her children, grandchildren, and daughter-in-law in 1952 and 1953 were made in contemplation of death or in lieu of a testamentary disposition of a part of her estate and therefore are includible in decedent's gross estate under section 811 (c), I. R. C. 1939, as amended. The applicable statute is printed in the margin.[1]

---

[1] SEC. 811. GROSS ESTATE.
  The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
  * * * * * * *
  (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—
    (1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—
      (A) in contemplation of his death; or
  * * * * * * ,
  (1) CONTEMPLATION OF DEATH.—If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d), and (f); * * *

The petitioner estate fully realizes that there is not only a general presumption that the determination of the Commissioner is correct but there is also a special statutory provision which says that gifts made within 3 years prior to decedent's death "shall, unless shown to the contrary, be deemed to have been made in contemplation of death." Petitioner has taken upon itself the burden of showing "to the contrary." Regulations 105, section 81.16 (as amended by T. D. 6071, June 11, 1954), provide, among other things, as follows:

> The phrase "contemplation of death," as used in the statute, does not mean, on the one hand that general expectation of death such as all persons entertain, nor, on the other, is its meaning restricted to an apprehension that death is imminent or near. A transfer in contemplation of death is a disposition of property prompted by the thought of death (though it need not be solely so prompted). A transfer is prompted by the thought of death if it is made with the purpose of avoiding the tax, or as a substitute for a testamentary disposition of the property, or for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized to determine whether or not such thought prompted the disposition.

A stipulation of facts has been filed and in addition thereto much other evidence has been received bearing upon the issue we have to decide. It will be noted that the foregoing regulation provides that "[t]he bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized to determine whether or not such thought prompted the disposition." We have done that, in the light of the evidence which is before us, and have reached the conclusion that the transfers in question were not made in contemplation of death nor were they made as a substitute for a testamentary disposition of the property in question, but were made from motives associated with life rather than death.

Respondent, in his brief, lays much stress on the fact that decedent was 87 years of age when the gifts were made and argues therefore, considering all the circumstances, we should find that they were made in contemplation of death. Of course, it is undoubtedly true that when an individual reaches the age that decedent had reached when she made the gifts he knows that he is "nearing the journey's end," but that alone does not mean that gifts of the kind which decedent made in the instant case were made in contemplation of death or as a substitute for a testamentary disposition. Notwithstanding the age of the donor, the dominant motive for such gifts may be associated with life rather than with death.

The leading case dealing with the contemplation of death transfers is *United States* v. *Wells*, 283 U. S. 102. In that case, in speaking of the statutory presumption that gifts made within a certain time prior to death (in the *Wells* case, 2 years prior to death) were made in contemplation of death, the Supreme Court said:

But this presumption, by the statute before us, is expressly stated to be a rebuttable one, and the mere fact that death ensues even shortly after the gift does not determine absolutely that it is in contemplation of death. The question, necessarily, is as to the state of mind of the donor.

We have in the instant case much evidence as to the state of mind of the donor, Maggie M. Holding, at the time the gifts were made. The testimony was to the effect that she had always been a remarkably healthy woman, energetic and active, and very much interested in the welfare of her children and grandchildren. She had frequently made them gifts from time to time at Christmas, on their birthdays, and in helping to educate her grandchildren, as shown in our Findings of Fact. In 1952, an opportunity came to make a sale, at an advantageous price, of some unimproved real estate which she owned and which was situated near the city of Raleigh. She made the sale and out of part of the proceeds, made gifts to her children, grandchildren, and daughter-in-law (who had remarried) of the amounts shown in our Findings of Fact. The evidence shows that she was in good health at the time these gifts were made and convinces us that the dominant motive which prompted her in making the gifts was associated with life, rather than death. She wanted to see the recipients of such gifts enjoy the money which she was giving them while she was living rather than that they should receive it after her death. The fact that she died not many months after the gifts were made does not convince us that the gifts were made in contemplation of death or as a substitute for testamentary disposition. The fact that decedent was 87 years of age when she made the gifts is an important factor, of course, to be considered but it is not, within itself, determinative of the issue.

The case of *Bradley* v. *Smith*, 114 F. 2d 161 (C. A. 7, 1940), involved a donor who made gifts at the age of 85 which were held to be not in contemplation of death even though made within 4 months of his death. The case of *Levi* v. *United States*, 14 F. Supp. 513 (Ct. Cl. 1936), is similar in some of its facts to the instant case. Decedent there was a man of 75 years of age when he made certain gifts. At the time of the gifts he was apparently in good health. Death was caused by cancer 2 months after the gifts were made and such gifts were held not in contemplation of death.

We are aware, of course, that the issue we have here to decide depends in each case upon its own facts. It is with full knowledge of this rule that we have decided the issue involved in favor of petitioner. Notwithstanding the decision of this issue in favor of petitioner, a Rule 50 computation will be necessary in order to dispose of the deduction of additional expenses and attorney's fees incurred by decedent's estate in the prosecution of this proceeding. See Rule 51, Rules of Practice, Tax Court of the United States.

*Decision will be entered under Rule 50.*