271 F.2d 623
 J. B. OLSON, Administrator with Will Annexed of the Estate of Ben Olson, Deceased, Plaintiff-Appellee,
v.
George REISIMER, United States District Director of Internal Revenue, Defendant-Appellant.
 No. 12646.
 United States Court of Appeals Seventh Circuit.
 November 4, 1959.
 
 Charles K. Rice, Asst. Atty. Gen., Howard A. Heffron, Acting Asst. Atty. Gen., David O. Walter, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Meyer Rothwacks, Lee A. Jackson, Melva M. Graney, S. Dee Hanson, Attorneys, Department of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for appellant.
 Ray M. Stroud, Madison, Wis. (Stroud, Stebbins & Stroud, Madison, Wis., of counsel), for appellee.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 J. B. Olson, Administrator with will annexed of the estate of Ben Olson, deceased (hereinafter called the taxpayer), sued George Reisimer, United States district director of internal revenue, for the recovery of federal estate taxes and interest, allegedly collected and paid erroneously on the estate of Ben Olson, deceased. From a judgment for $40,031.27 and interest, in favor of plaintiff, defendant appeals.
 
 
 2
 There is no dispute as to the facts which were found by the district court, 170 F.Supp. 541. Summarized, they are as follows:
 
 
 3
 Ben Olson (hereinafter called Ben or the decedent) and his wife, Nellie Olson (hereinafter called the decedent's wife or Nellie), were residents of Columbia county, Wisconsin. Nellie died on February 15, 1933.[1] Ben died on August 29, 1952. They had only one son, Grover C. Olson, who survived them as their only heir.
 
 
 4
 Upon the death of Ben, a federal estate tax return was filed by the taxpayer on or about February 12, 1954. This return showed a gross estate of $46,414.30, and the deductions and the specific exemption claimed resulted in no net estate reported for estate tax purposes.
 
 
 5
 Pursuant to the audit of such return by the district director of internal revenue, a net deficiency in estate tax was determined and assessed. This deficiency assessment arose by virtue of the inclusion in the decedent's gross estate of the value ($165,000) of certain real estate — commonly referred to as the Wisconsin Dells property — herein called the Dells property — located in Columbia county, Wisconsin, which was stated to be so included under either (1) section 811(a) of the Internal Revenue Code of 1939[2] as property owned by the decedent at his death, or (2) under section 811(c) (1) (B) thereof[3] as property transferred by him during his lifetime under which he retained the income therefrom for life. Taxpayer paid the deficiency plus interest and filed a claim for refund of the total amount on March 19, 1957. The claim was rejected and this suit followed.
 
 
 6
 The Dells property was acquired by Ben and his wife Nellie as joint tenants in 1920. On November 7, 1931, they executed a joint, mutual and reciprocal will which remained in force without change until Ben died. It provided in pertinent parts, as follows:
 
 
 7
 "Third: I, and each of us, give, devise and bequeath to the survivor of us all property, real, personal or mixed, owned jointly, as husband and wife, severally, in common, or in any capacity to have and to hold for the use, management, control and income thereof during said survivors natural life. In the event however, that the use and income thereof shall not be sufficient for the care, comfort and maintenance of such survivor, then he shall have the right to use all or such portion or part of the principal as may be necessary.
 
 
 8
 "Upon the death of the survivor of us the following trust shall become operative.[4]"
 
 
 9
 "Sixth: All of the rest, residue and remainder of our property and estate at the death of the survivor, I and each of us, give, devise and bequeath to our son Grover C. Olson and to his own use forever, and if he be then deceased, one third of said residue to our daughter-in-law, Jane Olson, and the remaining two thirds of said residue to our grandchildren share and share alike, children of said grandchildren deceased, however, to take by right of representation."
 
 
 10
 Upon Nellie's death in 1933 Grover became the executor of her estate as provided in the joint will. At that time, the Dells property was valued at approximately $35,000, and the executor filed an inventory of her estate, including therein one-half of said real estate.
 
 
 11
 On March 30, 1948, Ben Olson, then 79 years of age, executed a lease of a building on said property to one Donovan Deakin for the five-year period commencing January 1, 1948. Grover contested Ben's right to execute such lease by litigation in the Columbia county court in Wisconsin. Grover's wife and his children were made parties defendant to the petition. The following is a summary of what the court said in that case:
 
 
 12
 Before the execution of the joint will in 1931, Ben and Nellie were joint owners of the Dells property. By the terms of that will, they agreed that, upon the death of one, the interest of the survivor would be converted to that of a life estate, with power to consume the corpus under certain conditions, that [under state law] such an agreement may be accomplished by a joint will, especially where the will results from a pre-existing contract and that such a contract may be inferred from the provisions of the will itself. Doyle v. Fischer, 183 Wis. 599, 606, 198 N.W. 763, 765, 33 A.L.R. 733.
 
 The court said specifically:
 
 13
 "In the case at bar it is my opinion that the terms of the will suggest a pre-existing contract. The first paragraph of the will provides that the parties `having agreed as to a just and proper distribution of the assets held jointly, severally and as husband and wife' do in consideration thereof declare the instrument to be each other's will. The terms of the will are explicit and detailed. The will reveals a careful plan for the ultimate disposition of their property. * * *" (Italics supplied for emphasis.)
 
 
 14
 The court said that, upon the death of Nellie, the will became irrevocable because of the contractual obligation the survivor owed the deceased joint maker. The court stated, inter alia,
 
 
 15
 "That upon the death of Nellie Olson, Ben Olson's interest of joint tenancy in the said parcel was changed from a joint interest to that of a life estate, with power to use, control and manage said property and to consume the principal, if necessary, for his care, comport [sic] and maintenance."
 
 
 16
 A decree was entered by the county court on July 16, 1948 construing the will to this effect: upon the death of Nellie, the interests of her and Ben, as joint tenants with right of survivorship, in said real estate, "was [sic] changed from a joint tenancy to a life estate in Ben Olson, subject to his right to have the use, management, control and income thereof during his natural life, and if such use and income, exclusive of his individual income and property, is not sufficient for his care, comfort and maintenance, that he shall have the right to use all or such portion or part of the corpus thereof as may be necessary, and that subject to such life estate and the incidents thereto, the fee of said real estate is subject to the disposition thereof set forth in the joint will * * *, and upon his death, the unconsumed portions thereof shall pass in accordance therewith".
 
 
 17
 The decree declared that Ben had full power to lease said real estate "upon such terms and conditions as are not fraudulent to the remaindermen."
 
 
 18
 Counsel for the parties hereto agree that the action of the Columbia county court is acceptable as a correct statement of the property rights of the parties in interest under Wisconsin law.
 
 
 19
 The death of Nellie and the joint will converted her half interest as a joint tenant into a devise to Grover in fee, subject to a life estate in Ben with a right in Ben to consume the corpus partially or entirely for the purposes specified. The interest so transferred by Nellie to Grover was a remainder in fee. Grover neither paid nor agreed to pay any consideration in money or money's worth therefor. Whether this transfer imposed a liability for an estate tax on Nellie's estate, is not before us in this case.
 
 
 20
 As a part of the "careful plan for the ultimate disposition of their estate", revealed by the joint will, Ben's half interest, as a joint tenant with Nellie during her lifetime, was, at her death, transferred in fee to Grover, subject to a life estate in Ben, with the same rights as he was given as a life tenant in Nellie's half above-mentioned, and upon his death the possession of this remainder in fee, insofar as it was not consumed, passed in accordance with the provisions of the will, i. e. to Grover. Thus, Grover, the remainderman, upon Ben's death came into possession of the whole property then unconsumed by Ben, but subject to the lease to Deakin. The said transfer of Ben's half interest to Grover was without any consideration in money or money's worth paid or agreed to be paid by Grover.
 
 
 21
 The United States Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 810, 811, reads as follows:
 
 
 22
 "§ 810. Rate of tax
 
 
 23
 "A tax * * * shall be imposed upon the transfer of the net estate of every decedent, * * *.
 
 
 24
 "§ 811. Gross estate
 
 
 25
 "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * * —
 
 
 26
 "(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;
 
 
 27
 * * * * *
 
 
 28
 "(c) Transfers in contemplation of, or taking effect at, death
 
 
 29
 "(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise —
 
 
 30
 * * * * *
 
 
 31
 "(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or * *"
 
 
 32
 The joint will embodied Nellie's and Ben's careful plan for the ultimate disposition of their property to their sole heir at law, Grover, retaining to themselves, and to the survivor of them, complete enjoyment thereof until the survivor died. It is not improper that they should establish and execute such a plan. Neither is it a hardship nor injustice that an estate tax be assessed in this case. Neither the ingenuity of the author of the plan nor its uniqueness can shield the transmission of this estate to the owners' sole heir at law from a federal estate tax. Various methods have been set up by taxpayers, especially husbands and wives, by trust arrangements and otherwise, to avoid the impact of federal estate taxes. Yet the courts have universally held that such arrangements do not defeat the imposition of estate taxes. In Moreno's Estate v. Commissioner, 8 Cir., 260 F.2d 389, 392, the court said:
 
 
 33
 "The petitioners assert argumentatively that the estate tax has been assessed in this case against the estate of their decedent in respect of `property which she never owned, never transferred and from which she never benefited.' But that appearance results from the exchange she made with her husband when she created a $125,000 trust for him and their children with her money, and he created one in the same amount for her and their children with his money. The fortune these parents intended to pass on to their natural heirs when they died did accrue to those heirs according to that intent as effectually as though it had devolved upon the heirs in accordance with the wills. There is neither hardship nor injustice in assessing the estate tax in this case. It was plainly one in which the wife created a trust for the husband in consideration that the husband created a similar trust for her. Each in substance created a trust for himself and when so considered, each reserved sufficient interest to bring him within the estate tax statute. * * *"
 
 
 34
 To the same effect is Lehman v. Commissioner, 2 Cir., 109 F.2d 99 at Page 100 (certiorari denied 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406), where the court said:
 
 
 35
 "* * * The decedent transferred his share in trust for his brother for life, remainder to the brother's issue, with the right in the brother to withdraw $150,000 from principal, and in exchange the brother transferred his share on similar trusts for the decedent and issue, with a similar right in the decedent to withdraw $150,000. The properties transferred were indistinguishable. The fact that the trusts were reciprocated or `crossed' is a trifle, quite lacking in practical or legal significance. In re Perry's Estate, 111 N.J.Eq. 176, 162 A. 146. The law searches out the reality and is not concerned with the form. * * *"
 
 
 36
 We hold that the value on August 29, 1952 of the one-half remainder interest in fee simple theretofore transferred by Ben to Grover, as hereinbefore found, constitutes a part of the gross estate of Ben, as defined in § 811 (c) (1) (B) of the 1939 Code.
 
 
 37
 The judgment of the district court is reversed. Inasmuch as the impact of our holding requires further consideration, including a recomputation of taxes, by or under the supervision of the district court, this cause is remanded to that court for further proceedings not inconsistent with the views herein expressed.
 
 
 38
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 No federal estate tax was assessed or claimed against the estate of Nellie at or about the time of her death and no federal estate tax return was ever filed on behalf of said estate
 
 
 [2]
 26 U.S.C.A. (1939) § 811(a)
 
 
 [3]
 26 U.S.C.A. (1939) § 811 (c) (1) (B)
 
 
 [4]
 The fourth paragraph of the will provided for the creation of a trust under which the real estate here in question was to be held for their son, Grover, until he reached the age of 58 years, at which time the trust was to terminate and the property was to pass to the son and his heirs. This trust was never created since Grover reached the age of 58 years before the death of his father
 The fifth paragraph disposed of certain jewelry to a granddaughter.