ESTATE OF WILLIAM A. LIDBURY, DECEASED, HARRY LIDBURY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4130–81, 4131–81.     Filed February 4, 1985.

---

*Robert V. Lewis* and *Earl T. Byron,* for the petitioner.
*Victoria S. Crosley,* for the respondent.

GOFFE, *Judge*: The Commissioner determined a deficiency in petitioner's Federal estate tax for the taxable year 1977 in the amount of $22,440, and a deficiency in petitioner's Federal gift tax for the taxable year 1964 in the amount of $15,327.33. An addition to tax under section 6651(a)[1] of $3,831.83 was also imposed. The issues for decision are: (1) Whether William A. Lidbury, deceased, made a taxable gift of an interest in real property upon the death of his wife in 1964; and (2) whether transfers made by William A. Lidbury, deceased, are includable in his gross estate as gifts made in contemplation of death under section 2035.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference.

Harry Lidbury (Harry), is the executor of the will of his father, William A. Lidbury (Mr. Lidbury), who died on March 6, 1977, at the age of 89. Harry's residence was Sharon, Wisconsin, at the time that the petitions in these cases were filed. Mr. Lidbury, however, was a resident of the State of Illinois when he died.

Mr. Lidbury was born on March 27, 1887, and married Rose Lidbury (Mrs. Lidbury), who was born on August 17, 1892. The couple had four children, all of whom lived on and farmed land adjacent to or near their parents' farms until Mr. Lidbury's death:

| Child's name | Date of birth | Spouse's name | Offspring |
| --- | --- | --- | --- |
| Frederick | Jan. 10, 1914 | Lucille | Various |
| Harry | Jan. 31, 1915 | Darlene | Julie |
| Pearl | Oct. 27, 1922 | Francis Andersen | Various |
| Vernon | Aug. 2, 1927 | Louise | Various |

---

[1] All section references are to the Internal Revenue Code of 1954 and attendant regulations as amended and in effect for the relevant years, and all Rule references are to this Court's Rules of Practice and Procedure.

Mr. Lidbury was the fourth of five children. His two brothers, one of whom was still alive when Mr. Lidbury died, both died at the age of 89. His two sisters both predeceased Mr. Lidbury. Both died of mature-onset diabetes.

On October 3, 1951, Mr. and Mrs. Lidbury executed their last will and testament (the will). The terms of the will devised all of the couple's real and personal property to the surviving spouse, with the four children to inherit the entire estate upon the death of the surviving spouse. Pertinent portions of the will are:

FOURTH: After the decease of both of us we and each of us do and does give, devise and bequeath all the estate which * * * either of us shall own or be entitled to at the time of the death of the survivor of us, both real and personal, of every nature and description and wheresoever situate, unto our four children * * *, share and share alike, for their own use forever.

* * * * * * *

SIXTH: We make this joint will in pursuance of a contract and agreement between us for the purpose of disposing of all of the property which we now own, or may hereafter acquire, either jointly or severally, in accordance with a general plan agreed upon between us. In making this, our Last Will and Testament we, and each of us, do covenant and agree that upon the death of one of us, the survivor will not in any manner directly or indirectly dispose of his or her property to the end that the general plan of distribution, as provided herein, shall be altered and changed in any form whatsoever; and we and each of us do further covenant and agree that the survivor of us shall hold and manage the property which he or she may own outright and of which he or she may have the use, by reason of this, our Last Will and Testament, in a careful and prudent manner, so as not to dissipate any of said property.

Mrs. Lidbury died on December 16, 1964. The will was never filed with the probate court nor admitted as Mrs. Lidbury's will, having been either overlooked or forgotten at the time of her death. The Federal estate tax return filed with respect to Mrs. Lidbury's estate was accepted by the Internal Revenue Service as filed. The estate, as reported on the return, consisted primarily of Mrs. Lidbury's one-half interest in property owned in joint tenancy with her husband. Mr. Lidbury did not file a Federal gift tax return for any quarter of the taxable year 1964.

Mr. and Mrs. Lidbury owned the following farms in Boone County, Illinois, at the time of Mrs. Lidbury's death, as joint tenants with right of survivorship:

| Date of purchase | Size of farm | Price | Form of ownership |
|---|---|---|---|
| 1937[2] | 130 acres | $19,500 | Joint tenancy |
| 1930 | 40 acres | 1,800 | Joint tenancy |
| 1952 | 40 acres | 7,150 | Joint tenancy |
| 1955[3] | 80 acres | 19,800 | Joint tenancy |

The first three parcels of land were combined into one farm of 210 acres. Mr. and Mrs. Lidbury lived on the 80-acre farm at the time of Mrs. Lidbury's death in 1964. The Lidbury family, parents, children, and spouses, worked together on the two farms and the children's nearby farms in a cooperative fashion, without keeping accounts or paying each other for their labors. The Lidbury sons and son-in-law helped Mr. Lidbury plant, combine, and harvest crops without direct compensation other than reimbursement for out-of-pocket expenses. Mrs. Lidbury also contributed to the operations of the farm. Harry lived with his parents until he married at the age of 36, receiving only room, board, and pocket money.

On April 23, 1974, Mr. Lidbury began to see the first of several doctors for a prostate disorder. On May 5, 1974, Mr. Lidbury was admitted to Rockford Memorial Hospital where he underwent a transurethral prostatectomy. Mr. Lidbury's activities were restricted for approximately 2 months following the surgery, but by July 8, 1974, his condition had markedly improved. He was not informed at the time that he had possible cancer of the prostate, as the cancer was "Stage A" and considered clinically insignificant. Although he probably had mature-onset diabetes, the condition did not need treatment. Dr. Taylor, his primary doctor, considered Mr. Lidbury to be of generally good health at this time. Mr. Lidbury did have arthritis in his hands which made it necessary for him to hire his son, Frederick Lidbury, to act as his attorney in fact and write his checks.

After his wife died, Mr. Lidbury continued to live on the 80-acre farm until September 1974. From September 1974 through November 1975, Mr. Lidbury lived with his daughter Pearl whom he paid for room, board, and other care. During this period, Mr. Lidbury helped with the fall harvest in 1974, cut weeds and made minor repairs on the farms in the summer

---

[2]This property was purchased by Mr. and Mrs. Lidbury in 1928, quit-claimed to Harry on Jan. 28, 1937, and quit-claimed from Harry back to them as joint tenants on that same date.

[3]This property was a replacement for a house purchased in 1951, and sold in 1955 for $22,000.

of 1975, and attended the 25th wedding anniversary party for Harry and his wife on August 5, 1975. He also gave $1,500 to each of his four children on December 18, 1974.

The 80-acre farm was sold on July 22, 1975, for $116,000. Mr. Lidbury gave a portion of the net proceeds to his children, their spouses, and one grandchild on August 13, 1975. Harry used the $9,000 given to him and his wife to partially pay for a combine. The $3,000 given by Mr. Lidbury to Harry's daughter Julie was used to help pay for her college education. Mr. Lidbury was pleased to see his granddaughter graduate from college as neither Mr. Lidbury nor his son Harry had gone to college. Mr. Lidbury appeared healthy and vital at a family party given only 8 days before these gifts, and expressed no concerns to Harry at that time about his medical problems or any particular expectation of death.

In October 1975, Mr. Lidbury was examined in preparation for his admission to Meadows Park Nursing Home in Clinton, Wisconsin, in November 1975. He was informed that he had cancer of the prostate, but was "mostly unconcerned" according to the medical reports. By the fall of 1975, Mr. Lidbury was largely confined to a wheelchair. He attended a family Christmas celebration in 1975. Shortly thereafter, on January 8, 1976, Mr. Lidbury gave $3,000 to each of his children and to each of their spouses.

On February 20, 1976, Mr. Lidbury entered Beloit Memorial Hospital where he underwent a biopsy of the prostate on March 4, 1976, and a bilateral orchidectomy on March 15, 1976. His general physical condition was gradually deteriorating at this time.

Mr. Lidbury died on March 6, 1977, of acute myocardial failure due to arteriosclerotic heart disease as a consequence of general and cerebral arteriosclerosis. His prostate problems were listed on the death certificate as a condition contributing to death, but not related to the cause.

During the period between April 1973 and his death, Mr. Lidbury made a number of gifts to his children, their spouses, and one grandchild. Mr. Lidbury filed a Federal gift tax return for the quarter ending on September 30, 1975, with respect to his gifts of August 13, 1975, and paid a gift tax in the amount of $1,256.06, after use of the specific exemption amount

available under section 2521,[4] and the $3,000 annual exclusion for each donee.[5] A lawyer prepared Mr. Lidbury's income tax returns and gift tax return. Neither the lawyer nor anyone else provided detailed advice to Mr. Lidbury on the reduction of his estate by the use of gifts.

The combined chronology of events is as follows:

| Date | Event | Total gift |
|------|-------|-----------:|
| Apr. 1973 | $8,185.85 gifts to each of four children | $32,743 |
| Dec. 1973 | $2,200 gifts to each of four children | 8,800 |
| Mar. 6, 1974 | 3 years before death | |
| Apr. 23, 1974 | First doctor's visit related to prostate | |
| May 5, 1974 | Prostate surgery at Rockford Memorial Hospital | |
| Dec. 18, 1974 | $1,500 gifts to each of four children | 6,000 |
| July 22, 1975 | Sale of 80-acre farm | |
| Aug. 13, 1975 | $6,000 gifts to each of three children and to each of their spouses | 36,000 |
| | $4,500 gifts each to one child and that child's spouse | 9,000 |
| | $3,000 gift to one grandchild | 3,000 |
| Oct. 1975 | Visit to doctor, told of prostate cancer | |
| Nov. 1975 | Enters Meadows Park Nursing Home | |
| Jan. 8, 1976 | $3,000 gifts to each of four children and to each of their spouses | 24,000 |
| Mar. 15, 1976 | Prostate surgery at Beloit Memorial Hospital | |
| Jan. 6, 1977 | $3,000 gifts to each of four children and to each of their spouses | 24,000 |
| Mar. 6, 1977 | Death due to heart disease | |

When Mr. Lidbury died, Harry filed the will for probate with the Circuit Court of the 17th Judicial Circuit, Boone County, Illinois. Harry, as executor of the estate, timely filed a Federal estate tax return which included the 210-acre farm as the major asset. The only heirs and beneficiaries under Mr. Lidbury's will were Mr. Lidbury's four children. Attached to the return was a statement listing the gifts of August 13, 1975,

[4] Sec. 2521 was repealed by the Tax Reform Act of 1976, Pub. L. 94–455, sec. 2001(b)(3), 90 Stat. 1520, 1849, effective for gifts made after Dec. 31, 1976.

[5] Taxable gifts in the taxable year 1973 totaled $41,543.40. Mr. Lidbury did not file a gift tax return in the taxable year 1973 as he believed that he could give up to $42,000 to his children without gift tax consequences by using the specific exemption of $30,000 and four annual exclusions of $3,000 each. After applying the exemption and exclusions to the gifts in the taxable year 1973, $456.60 of the specific exemption remained unused and was claimed on the quarterly gift tax return for the August 1975 gifts.

with a declaration that the motivation for the gifts was Mr. Lidbury's "desire to reward his children for what they had done for him in the past."

On December 4, 1980, the Commissioner timely issued two statutory notices of deficiency to petitioner, the first pertaining to estate taxes, the second pertaining to gift taxes. The Commissioner determined that the gifts made in December 1974, August 1975, and January 1976 were includable in the gross estate as gifts made in contemplation of death under section 2035, resulting in a deficiency of $22,440. The gifts made in 1973 and on January 6, 1977, are not at issue in the statutory notice. The Commissioner further determined that Mr. Lidbury made a gift of a remainder interest in the 290 acres of farm land to his four children on December 16, 1964, such interest having a fair market value of $99,058.72. This determination resulted in a deficiency of $15,327.33. An addition to tax for delinquency for failure to file a return under section 6651(a) of $3,831.83 was also imposed.[6]

The two cases, one for the determination of estate tax, the other for determination of gift tax, were consolidated for trial, briefing, and opinion by order dated November 28, 1983.

## OPINION

The issues for decision are: (1) Whether William A. Lidbury, deceased, made a taxable gift of an interest in real property upon the death of his wife in 1964; and (2) whether transfers made by William A. Lidbury, deceased, are includable in his gross estate as gifts made in contemplation of death under section 2035.

Petitioner contends that the will was not a binding contract until filed for probate when Mr. Lidbury died, and that, therefore, nothing passed under the will until 1977. Alternatively, petitioner argues that, if the will was a binding contract by virtue of being a joint and mutual will, Mr. Lidbury received a life estate in his wife's half of the real property as consideration for the transfer of the remainder in his one-half interest to the children, to become effective upon his death. Further, under this alternative argument, only Mr. Lidbury's one-half of the real property should be included in his gross

---

[6]Respondent conceded the addition to tax on brief.

estate under section 2031, as the remainder interest in his wife's one-half of the real property passed to the children upon Mrs. Lidbury's death, and not through Mr. Lidbury's estate.

Respondent argues that Mrs. Lidbury's death created a contract under the will, binding Mr. Lidbury to convey all of the real property received by him as the surviving joint tenant and held by him as fee simple owner during his lifetime, to his children at his death, whether or not the document was filed for probate. Respondent thus contends that the gift consists of the present value at the time of Mrs. Lidbury's death of the children's contractual right to receive the entire property when Mr. Lidbury died, and respondent values this gift of a cause of action as equivalent to a remainder interest in the property. Respondent includes the entire value of the unsold joint tenancy property in Mr. Lidbury's estate.

The nature and extent of an interest or right to property is controlled by State law. *Aquilino v. United States*, 363 U.S. 509, 512–513 (1960); *Estate of Fulmer v. Commissioner*, 83 T.C. 302, 304 (1984). The determination of whether Mr. Lidbury made a gift to his children upon his wife's death, therefore, requires an analysis of Illinois law as it applies to real property held in joint tenancy, and to joint and mutual wills.

In Illinois, a joint tenancy is not severed by either the execution or probate of a joint and mutual will. *First United Presbyterian Church v. Christenson*, 64 Ill. 2d 491, 356 N.E.2d 532, 535 (1976). The title to the property held in joint tenancy automatically passes by operation of law to the survivor or survivors. *Klajbor v. Klajbor*, 406 Ill. 513, 94 N.E.2d 502 (1950). Mr. Lidbury, therefore, received his wife's one-half interest in their jointly held property when she died, as the surviving joint tenant, and not under the will.[7]

The issue, however, is whether the transformation of Mr. Lidbury's interest into a fee simple interest in the property was subject to a contract for disposition equivalent to a gift to

---

[7]Despite the virtually parallel factual situations, this case is distinguishable from *Olson v. Reisimer*, 271 F.2d 623 (7th Cir. 1959). The court found that, under Wisconsin law, the joint and mutual will effected a severance of the joint tenancy when the wife died. Her one-half interest in the property was, therefore, devised to their child under the terms of the joint will, subject to a life estate in the husband, and was thus not taxable subsequently in the husband's estate. The husband's one-half interest was transferred upon the wife's death to their child, again subject to a life estate in the husband, and was included in his estate. The issue of a purported gift by the husband at the time of the wife's death was not raised.

his children. Real property held in joint tenancy can be the subject of a contractual agreement contained in a joint and mutual will, and a court of equity, under appropriate circumstances, will enforce the agreement and limit the surviving joint tenant's disposition of the property. *First United Presbyterian Church v. Christenson, supra* at 535. The devisees do not, however, acquire a remainder interest upon the death of the first spouse, but, instead, become third-party beneficiaries entitled to seek enforcement of the contract in equity. *Tontz v. Heath*, 20 Ill. 2d 286, 170 N.E.2d 153, 158 (1960).

A joint and mutual will is not automatically effective as a contract or a will. It is long-established law in Illinois that a will is not effective for any purpose until it is admitted to probate. *Crooker v. McArdle*, 332 Ill. 27, 163 N.E. 384, 385 (1928). This broad generalization negates the effect of the Lidburys' will as a will until admitted to probate upon Mr. Lidbury's death. It is still possible, however, that the will might, nonetheless, be a contract for testamentary disposition if it became an irrevocable contract when Mrs. Lidbury died.

A joint and mutual will, executed pursuant to an agreement not to revoke, is revocable at any time prior to death in any of the manners prescribed by statute. *In re Estate of Gaglione*, 97 Ill. 2d 408, 454 N.E.2d 664, 668 (1983); *In re Baughman's Estate*, 20 Ill. 2d 593, 170 N.E.2d 557, 562 (1960). Even a purportedly irrevocable joint and mutual will, whether or not probated at the death of the first spouse, may be revoked by the surviving spouse, and a later will may be admitted to probate. *In re Estate of Gaglione, supra; In re Briick's Estate*, 24 Ill. App. 2d 77, 164 N.E.2d 82 (1959). The prior will may create equitable claims against the estate, but such claims will not work to defeat the later will's admission to probate.

For such a will to become nominally irrevocable, the first spouse must die, and the testamentary disposition of the entire estate must be in pursuance of a contract or compact. A contract, in law or equity, limiting disposition will be found in a joint and mutual will only after an examination of the facts and circumstances surrounding, as well as the language of, the will. *In re Edwards' Estate*, 3 Ill. 2d 116, 120 N.E.2d 10 (1954). The joint and mutual will creates merely a presumption in favor of a contract between the parties who have executed the will, such contract to be established by clear, convincing, and

satisfying evidence. *Bonczkowski v. Kucharski*, 13 Ill. 2d 443, 150 N.E.2d 144, 150 (1958). A contract may be found when the spouses divide their estate among children of prior marriages, or where special circumstances demonstrate that other consideration creates a contractual obligation. *Tontz v. Heath, supra* at 158; *Bonczkowski v. Kurcharski, supra* at 150–151. The third-party beneficiaries of the original joint and mutual will, therefore, must prove that there was a contract to limit the disposition of the property, and that the contract was not revoked. *In re Baughman's Estate, supra.*

In this case, despite the use of the word "contract" in the will, the will merely devises the estate equally to the couple's children, in accord with the natural disposition of the property. The will, rather than being an important contract for disposition, was actually forgotten at the time of Mrs. Lidbury's death, and evidently ignored until Mr. Lidbury's death. We are unable to find that the joint and mutual will was a contract that acted to limit Mr. Lidbury's right of disposition of the property at the time of Mrs. Lidbury's death. Furthermore, Mr. Lidbury could have, under Illinois law, revoked the will before his death had it not been in obvious accord with his personal wishes.

Even were we to assume that this will was an irrevocable contract upon Mrs. Lidbury's death, it would not result in the transfer of a present interest in the property of the survivor. The effect is contractual, not dispositive. *Brown v. Commissioner*, 52 T.C. 50, 66 (1969). It is settled law that a will speaks only at the time of the testator's death. Mr. Lidbury, by using the joint and mutual will as his own, made a testamentary disposition, not an inter vivos transfer. *Brown v. Commissioner, supra* at 58. No transfer taxable as a gift occurred when Mrs. Lidbury died, and Mr. Lidbury's estate includes the value of the unsold property.

The second issue is whether transfers made by William A. Lidbury, deceased, are includable in his gross estate as gifts made in contemplation of death under section 2035, which provides, for transfers made before January 1, 1977:

SEC. 2035(a). GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale

for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) APPLICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death * * * transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section * * * [8]

The issue of whether a gift was made in contemplation of death is a factual one requiring an examination of all of the evidence for a determination of whether the decedent's motives were associated with life or with death. *United States v. Wells*, 283 U.S. 102, 117 (1931). The phrase "in contemplation of death"—

does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition. [Sec. 20.2035–1(c), Estate Tax Regs.]

---

[8]Sec. 2035 was amended, and a new sec. 2035(c) added, by the Tax Reform Act of 1976, Pub. L. 94–455, sec. 2001(a)(5), 90 Stat. 1520, 1848, effective for estates of decedents dying after Dec. 31, 1976, except that the provisions do not apply to transfers made before Jan. 1, 1977. These sections provide:

SEC. 2035(a). INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) EXCEPTIONS.—Subsection (a) shall not apply to—

*       *       *       *       *       *       *

(2) any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a).

(c) INCLUSION OF GIFT TAX ON CERTAIN GIFTS MADE DURING 3 YEARS BEFORE DECEDENT'S DEATH.—The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976, and during the 3-year period ending on the date of the decedent's death.

Despite the fact that Mr. Lidbury died after Dec. 31, 1976, none of these subsections applies to the issues for decision in this case as the gifts made in January 1977 are not at issue in the present case, and these subsections are inapplicable to transfers made before Jan. 1, 1977.

Whether a transfer "was made in contemplation of death within the meaning of section 2035 depends upon the dominant motive of the decedent which we must determine on the basis of all of the facts and circumstances." *Estate of Lowe v. Commissioner*, 64 T.C. 663, 672 (1975) (fn. ref. omitted), affd. 555 F.2d 244 (9th Cir. 1977); *Allen v. Trust Co.*, 326 U.S. 630, 636 (1946).

Petitioner contends that the gifts were part of a regular pattern of giving, that the gifts were in appreciation for past years of labor performed without compensation, and that the gifts were for the pleasure of seeing the recipients enjoy them rather than in contemplation of death.

Respondent counters that there was no apparent pattern of giving, that the gifts were a substitution for testamentary disposition, and that Mr. Lidbury made these gifts in contemplation of death. The Commissioner's determination that gifts by Mr. Lidbury were transfers made in contemplation of death "is entitled to the usual presumptive correctness and, in addition, is entitled to the rebuttable statutory presumption that the transfers were made in contemplation of death." *Estate of Zaiger v. Commissioner*, 64 T.C. 927, 937 (1975); Rule 142(a).

In making a determination of the decedent's motives, the courts have looked to several factors:

(a) The age of the decedent at the time the transfers were made; (b) the decedent's health, as he knew it, at or before the time of the transfers; (c) the interval between the transfers and the decedent's death; (d) the amount of the property transferred in proportion to the amount of property retained; (e) the nature and disposition of the decedent * * *; (f) the existence of a general testamentary scheme of which the transfers were a part; (g) the relationship of the donee or donees to the decedent, i.e., whether they were the natural objects of his bounty; (h) the existence of a long established gift-making policy on the part of the decedent; (i) the existence of a desire on the part of the decedent to escape the burden of managing property by transferring the property to others; (j) the existence of a desire on the part of the decedent to vicariously enjoy the enjoyment by the donees of the property transferred; and (k) the existence of the desire by the decedent of avoiding estate taxes by means of making *inter vivos* transfers of property. [*Estate of Johnson v. Commissioner*, 10 T.C. 680, 688 (1948).]

Mr. Lidbury was generally healthy for a man of his age, active in the operations of several family farms, and a participant in various family activities. The fact that he

underwent prostate surgery in 1974 and in 1976 gave him no reason to feel that death was any more likely than it would otherwise be for a man of his age. The prostate condition was specifically stated on his death certificate not to be a cause of death. His siblings were long lived, and Mr. Lidbury was not receiving treatment for the mature-onset diabetes that was the family's most usual cause of death. Further, his death was caused by neither diabetes nor the prostate problems, but rather by heart disease. Although Mr. Lidbury developed the various problems of old age, such as arthritis, petitioner has met his burden of proving that Mr. Lidbury had no more than the "general expectation of death such as all persons entertain." Sec. 20.2035–1(c), Estate Tax Regs.; Rule 142(a).

The chart of the gifts during the final 4 years of Mr. Lidbury's life, which includes 5 calendar years, indicates a clear pattern of giving, albeit on a random basis and in random amounts, which is demonstrative of a "pattern of benevolence not engendered by the thought of death." *Cunningham v. United States*, 553 F.2d 394, 397 (5th Cir. 1977); *Estate of Hill v. Commissioner*, 64 T.C. 867 (1975), affd. without published opinion 568 F.2d 1365 (5th Cir. 1978). Mr. Lidbury's family had assisted him over a period of decades with no recompense or financial reward, and he enjoyed giving them money as it became available to him. These are life-related, not death-related motives. *United States v. Wells, supra* at 118–119.

When transfers are made with the advice of a lawyer or tax counselor in connection with a complete estate plan without other life-related motivation, the transfers are made in contemplation of death. *Estate of Carnall v. Commissioner*, 25 T.C. 654 (1955). It is apparent, however, that Mr. Lidbury made the gifts of 1973 and 1974 without the knowledge of his attorney. Mr. Lidbury was, therefore, aware of the specific exemption and $3,000 annual exclusions without the benefit of legal advice. Further, although the gifts were made in roughly equal amounts to the families of each of his children, the equal distribution under the will was either unknown or not remembered at the time of the gifts. "It is entirely normal for an individual to make gifts during his lifetime to the natural objects of his affection and bounty." *Cunningham v. United States, supra* at 397. The equal distribution was not a substi-

tute for testamentary disposition, nor were the gifts made in order to avoid estate taxes. *Estate of McIntosh v. Commissioner*, 25 T.C. 794 (1956), affd. 248 F.2d 181 (2d Cir. 1957).

When these general findings are applied to the gifts of December 1974, it is clear that these gifts were made months after both the first surgery and Mr. Lidbury's successful recovery from the operation. These gifts were, therefore, not "in contemplation of death" and are not includable in Mr. Lidbury's estate under section 2035(a).

The gifts made in August 1975 were also not prompted by death-related motives but rather continued a pattern of gift-giving in appreciation of past services over decades of working the family farms together. Mr. Lidbury had a source of readily available funds for gifts from the sale of the 80-acre farm, a situation analogous to that in *Estate of Holding v. Commissioner*, 30 T.C. 988 (1958). Mr. Lidbury also had a number of other purposes for making the gifts of August 1975, including a desire to see his granddaughter complete college, and a general wish to see the recipients enjoy the gifts. Mr. Lidbury's age alone is insufficient to transform these gifts into transfers made in contemplation of death. *Cunningham v. United States, supra; Estate of Hill v. Commissioner, supra.* The August 1975 gifts are, therefore, not includable in Mr. Lidbury's estate.

The gifts of January 1976 were made shortly after Mr. Lidbury entered the nursing home, but also shortly after his full participation in a family Christmas celebration. Although he was not in perfect health, these gifts are a clear extension of his past gift-giving in appreciation for his family's past efforts, and for the pleasure of giving, and, therefore, are also not includable in his estate.

In order to reflect the foregoing,

*Decisions will be entered for the petitioner.*