(No. 33115.—

IN THE MATTER OF THE ESTATE OF W. F. EDWARDS.— (ISAAC E. TURNER *et al.*, Appellants, *vs.* MYRTLE BLUE, Appellee.)

*Opinion filed May 24, 1954.*

BARTLET, KARBER & HALE, of Shawneetown, and PYLE & McCALLISTER, of Carmi, for appellants.

SUMMERS & ARGUS, of Eldorado, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from an order entered by the circuit court of Gallatin County admitting to probate the joint will of W. F. Edwards and Anna B. Edwards dated October 29, 1940, and codicil thereto, as the last will of W. F. Edwards, and denying probate of a document dated June 13, 1952, purporting to be the last will of the same decedent.

W.F. Edwards and Anna B. Edwards, husband and wife, jointly executed an instrument as their last will and testament on October 29, 1940. The document stated that they had no living children or grandchildren and specified the collateral heirs of each of them, who were expressly disinherited by its terms. The will recited that Myrtle Blue had lived with the testators and cared for them for more than ten years and that they intended for her to have everything upon the death of the survivor. Following an expression that all debts and funeral expenses be paid, the will stated, "We therefore desire that all property, real as well as personal, of which we may be possessed at the

time of the decease of either of us, shall be held by the survivor during his or her lifetime, to use same as such survivor may see fit, except that such shall not be construed at any time to mean that the survivor shall sell any of the real estate owned by the other during his or her lifetime."

Subsequent to the execution of the above will, W. F. Edwards and Anna B. Edwards executed a codicil by which they corrected a name misspelled in the first instrument, and ratified and confirmed their first will in all other respects. Anna B. Edwards departed this life on July 17, 1943. Her will was never offered for probate. Thereafter, on June 13, 1952, W. F. Edwards subscribed to his individual will by the terms of which he gave Myrtle Blue the use of all his household furniture, farm machinery and equipment for life. He further created a life estate in Myrtle Blue as to all the farm income from the lands of which he died seized and also as to the oil-and-gas royalties from said lands. In addition, she was given a specific bequest of $1500. The will then devised to testator's brother, nephews and nieces certain tracts of land subject to the life income of Myrtle Blue.

W. F. Edwards died on February 10, 1953, and on the same day Myrtle Blue, the named executrix in the jointly subscribed will, petitioned the county court of Gallatin County to probate said instrument as the will of W. F. Edwards. Subsequently Isaac E. Turner, the named executor in the later will, petitioned for probate and letters testamentary on the latter document. An appeal was taken to the circuit court from an order of the county court admitting the will of October 29, 1940, and codicil thereto, to probate and refusing to probate the instrument dated June 13, 1952.

On a trial *de novo* before the circuit court the proponents of the first will introduced the testimony of the subscribing witnesses as to due execution, attestation and testamentary capacity of both W. F. Edwards and Anna B.

Edwards. The proponents of the later document introduced the testimony of the subscribing witnesses as to execution, attestation and testamentary capacity in regards to that will. They further offered to prove by five witnesses, then present in court, that Anna B. Edwards was an epileptic and incapable of understanding the meaning of a written contract or of executing a will and also at the time of the execution of the joint will she had no property or estate which would pass under the terms of said will. The circuit court refused to admit the testimony of these witnesses. An order was entered remanding the cause to the county court with directions to admit the joint and mutual will to probate as the last will of W. F. Edwards and to deny probate of the document dated June 13, 1952. From this order, Isaac E. Turner and some of the beneficiaries under the second document have taken this appeal. Assignments of error made by them are the refusal of the trial court to admit the testimony of the five witnesses offered by the proponents of the second will and the order of the court admitting the first will to probate and denying the probate of the later will. These assignments of error form the issues in the case.

The lower court being confronted with two duly executed wills of W. F. Edwards was compelled to determine which was entitled to probate. Normally, the later dated instrument, by its express provision revoking all former wills and by operation of law, (section 46 of the Probate Act, Ill. Rev. Stat. 1953, chap. 3, par. 197,) would revoke a prior will. The question here presented, therefore, is whether the trial court was correct in finding that the will of October 29, 1940, was irrevocable on its face, since its proponents offered only that testimony of the subscribing witnesses which is usually presented to make proof of a will.

A search of authorities is convincing that each case must be decided on its own facts and merits. The case of

*Frazier* v. *Patterson,* 243 Ill. 80, is the leading case in Illinois in support of the proposition that a joint will of a husband and wife with reciprocal provisions is presumed to be executed pursuant to a contract and therefore irrevocable upon the death of one of the testators. As to revocation of joint or joint and mutual wills, this court said in that case: "A joint will which is not reciprocal is simply the individual personal will of each of the persons signing the same and is subject to the same rules that would apply if the will were several. Mutual wills,—that is, where two persons execute wills reciprocal in their provisions but separate instruments,—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other; and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other." As to the requirement that proof be made to show the existence of a contract or compact between the parties to execute a mutual will, the *Frazier case* said: "* * * where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference

is especially strong where the parties are husband and wife and where they have a common interest in the welfare of the devisees. * * * If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did."

The rule in favor of the presumption announced in the *Frazier case* has not received unqualified approval in later decisions. In *Curry* v. *Cotton,* 356 Ill. 538, a widow filed a bill in the circuit court to have a jointly executed will of herself and her husband declared to be the valid last will of her deceased husband as opposed to a later will executed by him. The court there did not rely exclusively upon the presumption that a joint will of husband and wife with reciprocal provisions was executed pursuant to an agreement, but said the contract was clearly apparent from the four corners of the will. The conclusion was based on the fact that the word "covenant," meaning a written agreement, was used in the will, and also that the instrument was under seal, thereby importing a consideration. The joint will was thereupon upheld.

The next case in point of time was *Jacoby* v. *Jacoby,* 342 Ill. App. 277. The situation there presented was decidedly different from the case at bar. In that case a son was seeking an injunction to prevent his mother from revoking a will she had executed jointly with her husband, who had since died, on the ground that the joint will had been executed pursuant to a contract and became irrevocable after the death of one testator. The evidence showed the will was hastily drawn since the parties were about to depart for Europe. The court held the burden of proving the existence of a contract making the joint will irrevocable was upon the party asserting it and the burden was not sustained by the proof. The presumption favoring irrevocability as established by the *Frazier case* was refuted by the evidence. The court was not called upon to pass upon the existence of a contract solely from

the terms of the will; however, it distinguished the will there from that in the *Frazier case* by pointing out that the Frazier will used the phrase " 'declare this and none other' to be the testators' last will," which was significant in suggesting a contract. And the further distinction was made in that each testator in the *Frazier case* gave the other a life estate, whereas the testators in the *Jacoby case* gave each other a gift *simpliciter*.

The case of *Peck* v. *Drennan,* 411 Ill. 31, cited by both parties to this appeal, is not authority for or against the finding of an agreement from the terms of a joint will since the validity of the will there under consideration was unquestioned.

The cases involving wills which are merely mutual or reciprocal in their provisions, but not joint, generally require proof by clear and convincing evidence that they were executed as the result of a binding contract to be irrevocable. The proof of the contract and the consideration to support it must be made *aliunde* the wills. *Curry* v. *Cotton,* 356 Ill. 538; *Frese* v. *Meyer,* 392 Ill. 59; *Jordan* v. *McGrew,* 400 Ill. 275; *National Bank of Austin* v. *Emerson,* 335 Ill. App. 494; *Monninger* v. *Koob,* 405 Ill. 417.

The quest for a common denominator among these authorities discloses a tendency to favor a presumption that joint and mutual wills, particularly between husband and wife, are executed pursuant to a contract or agreement between the testators. The later decisions, however, appear reluctant to permit the presumption to be sufficient in itself but search the terminology of the will for an expression of intention on the part of the testators to stand in the stead of supporting proof. Following the trend seemingly established by precedent, we find the will in the instant case embodies the declaration of intention of testators to provide for Myrtle Blue for the care she had rendered them for several years, indicative of a predesigned arrangement between them. No such statement

is found in the wills in either the *Frazier* or *Curry* cases. Further, the will and its codicil are both under seal and this has been held to be of some significance. Moreover, the attestation clauses state that the testators have declared and published said instruments "as and for their joint and mutual, as well as several" wills. While the attestation clause has no control over testamentary disposition, the recital therein contained in this will seems to indicate an attempt on the part of the scrivener to carry out the wishes conveyed to him by the testators. Having noted these distinctive features of this particular will, we feel that the lower court was correct in its judgment that the will of October 29, 1940, was the joint and mutual will of W. F. Edwards and Anna B. Edwards and was irrevocable.

The next issue to be considered pertains to the admissibility of the testimony offered by appellants. It is argued by them that a joint and mutual will without any valid consideration or valid contract is revocable by either of them after the death of the other if the survivor takes nothing under it. Where the will is executed pursuant to a contract, it is not necessary that the survivor receive material gain upon the death of the other testator, since he has already derived benefit from the consideration given by the deceased to bind the agreement. The contract becomes executed as to the deceased testator and is thereafter irrevocable by the other. (*Curry* v. *Cotton*, 356 Ill. 538, and *dictum* contained in *Peck* v. *Drennan*, 411 Ill. 31.) Since we have already found the will in question was executed pursuant to a contract between the parties, this argument has been disposed of, and the testimony offered as to property owned by Anna B. Edwards at the time of executing the will or at the time of her death was properly excluded.

The question of the admissibility of evidence on the mental capacity of Anna B. Edwards to make a will poses another problem. The evidence admissible on appeal to

the circuit court under section 71 of the Probate Act has been thoroughly adjudicated on previous occasions. The law is settled that on appeal to the circuit court from an order of the probate or county court, either allowing or denying probate of a will, the proponent may support the will by any evidence competent to establish a will in chancery, but the contestant is limited, as to evidence of the execution of the will and the testamentary capacity of the testator, to the subscribing witnesses. (*Bley* v. *Luebeck,* 377 Ill. 50.) As to events occurring subsequent to the execution of the will which might be outside the knowledge of the subscribing witnesses and which would operate to revoke or invalidate the will, the statute contains no restriction upon either party as to the right to offer evidence on those issues, either in the county court or in the circuit court on appeal. (*In re Estate of Holmberg,* 400 Ill. 366; *Research Hospital* v. *Continental Illinois Bank and Trust Co.* 352 Ill. 510; *Bley* v. *Luebeck,* 377 Ill. 50.) The question of the mental competency of Anna B. Edwards at the time of the execution of the will does not relate to an event subsequent to its making which would be beyond the knowledge of the attesting witnesses. It is true that the joint and mutual will was never offered for probate as her will, and it is therefore argued that since no issue is being made as to the testamentary capacity of W. F. Edwards, for whose estate the will has been offered, testimony by witnesses other than that of the subscribing witnesses should have been received as to the mental competency of Anna B. Edwards. All three of the subscribing witnesses were produced in court and testified they believed Anna B. Edwards to be of sound and disposing mind and memory at the time the will was signed. We believe it is a highly technical construction of section 71 of the Probate Act which appellants desire to impress upon the court. By the mere payment of the probate filing fee and presentation of the same will for probate as her will, the conten-

tion of appellants would be obviated. Moreover, we are not unmindful of the fact that since the will was not probated as that of Anna B. Edwards, appellants are denied the right to file a will contest as to her will. (*Research Hospital* v. *Continental Bank,* 352 Ill. 510.) We likewise appreciate the law to be that a joint and mutual will, to be valid as the will of one testator, must also be the valid will of the other. (*Martin* v. *Helms,* 319 Ill. 281.) However, we do not feel that appellants' rights under the law have been jeopardized under the circumstances presented in this case. The ruling of the lower court against the admissibility of certain evidence offered by appellants was a correct interpretation of section 71 of the Probate Act. By this opinion we do not intend to determine the rights of the parties in the will contest proceeding now pending in the lower court.

For the reasons stated in this opinion, the judgment of the circuit court of Gallatin County is affirmed.

*Judgment affirmed.*