(Nos. 35747, 35756 Cons.—

NETTIE TONTZ *et al.,* Appellants and Appellees, *vs.* ALMA HEATH *et al.,* Appellees and Appellants.

*Opinion filed September 29, 1960.—Rehearing denied Nov. 30, 1960.*

BLACK, BLACK & BORDEN of Peoria, for appellants in No. 35747, and PETER J. PAOLUCCI, of Lacon, and EDWARD E. HAUGENS, of Toluca, for appellants in No. 35756.

ROBERT A. BARNES, of Lacon, and DONALD G. BESTE and HOMER W. KELLER, both of Peoria, (MILLER, WESTERVELT & JOHNSON, of Peoria, of counsel,) for appellees in No. 35747, and WALTER C. OVERBECK, of Henry, and BLACK, BLACK & BORDEN, of Peoria, for appellees in No. 35756.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

In 1933 William C. Kamp and Helena Kamp, his wife, executed a joint and mutual will. William C. Kamp died in 1934 and Helena died in 1957. During the intervening years the widow gave away one parcel of real estate, transferred another for a valuable consideration, and leased two others. She also made gifts of certain United States government bonds and household goods. After her death certain beneficiaries under the will filed a complaint alleging that these transfers were invalid under an agreement embodied in the joint and mutual will. The court approved the report of a special master and set aside all but one of the transfers. The adversely affected transferees have appealed from this portion of the decree. (No. 35756.) The court also held that the claim of the plaintiffs was barred by limitations as to the tract of real estate which had been sold, and the plaintiffs have taken a separate appeal from this portion of the decree. (No. 35747.) Both appeals involve freeholds, and they have been consolidated for opinion in this court.

The will executed by William C. Kamp and Helena Kamp provided: "We give, devise and bequeath to each other, respectively, all of our respective estates, real, personal and mixed, that we respectively now own or shall hereafter acquire * * * to the one of us who shall survive, for and during the term of his or her natural life. After the decease of both of us, we direct our successor executors * * * to sell * * * all of the personal property, either at public or private sale; and we further direct that said successor executors as soon as they are able to obtain a fair and reasonable price therefor, to sell all of our real estate, either at public or private sale, and to * * * deliver to the purchaser or purchasers thereof a good and sufficient deed or deeds of conveyance thereto. During the interim between the death of the survivor of

us and the sale of said real estate, we direct that our successor executors shall rent all of said real estate on such terms as they shall deem advisable and most advantageous to our estate, * * * pay the taxes * * * keep up the insurance on the buildings * * * and to make such necessary expenditures as shall be required to keep the improvements in a good and substantial state of repair."

The will further provided that after the real estate and personal property were sold, the rents on hand and the moneys received from the sales should be distributed. William and Helena had two daughters, Alma (Kamp) Heath and Helen (Kamp) Willcott. Each was given a $\frac{1}{7}$ share. William also had five daughters by a previous marriage, one of whom had predeceased him leaving two children. Each surviving daughter was given a $\frac{1}{7}$ share, and each child of the deceased daughter a $\frac{1}{14}$ share.

The will was admitted to probate in the county court of Marshall County, where the land was located, on October 15, 1934, as the last will and testament of William C. Kamp.

When the will was executed and at the time of the death of William Kamp, he and his wife Helena owned four tracts of real estate as joint tenants with right of survivorship. Tract 1 was the residence, which Helena Kamp occupied until her death in 1957. Tracts 2 and 3 were farms and tract 4 was in part farm land and in part a duck hunting area. William Kamp's estate also included partial interests in two pieces of real estate and some personalty not involved in these appeals.

On September 14, 1937, Helena Kamp sold tract 4 to Paul F. Miller for a valuable consideration. By mesne conveyances, the tract has been conveyed to the defendants, Iben, Horstman, Brock and Storts. These defendants and their predecessors in interest have been in possession and have paid the taxes upon the property since 1937, and have made extensive improvements. A small portion of this tract

has been under cultivation and the remainder has been used regularly by the defendants and their predecessors for duck hunting.

On November 9, 1937, Helena Kamp executed and delivered to her daughter, Alma Kamp (Heath), a warranty deed conveying tract 1 to Alma and Helen Kamp (Willcott). It is not contended that there was any consideration for this conveyance. The deed was not recorded, and Helena Kamp remained in possession until her death. She paid the taxes on tract 1 for the year 1956, and her estate paid the taxes for 1957, the year of her death.

In 1956, Helena Kamp gave her daughters a bill of sale for all of the furnishings in her home, but the furnishings remained in the residence until her death. She also purchased $3000 worth of survivorship U.S. savings bonds, payable on death to Alma Kamp Heath, and an equal amount payable to Helen Kamp Willcott. These were gifts to her daughters, and were cashed by them after her death. She also gave her daughters and their children unspecified amounts of government bonds as Christmas and birthday presents and as gifts on other occasions.

In June of 1957, Helena Kamp leased tracts 2 and 3 to defendant Charles Grill, for a ten-year term commencing March 1, 1958.

Shortly after Helena Kamp's death in October of 1957, her husband's four daughters by his former marriage and the two children of the deceased fifth daughter of that marriage brought this action to set aside the above transfers against all of the persons who had received property from Helena Kamp. The trial court found that all of the transfers, with the exception of the gifts of unspecified amounts of bonds on special occasions, were null and void. It held that the joint and mutual will of William and Helena Kamp embodied a contract which became binding upon Helena Kamp after her husband's death, and that she was thereby estopped from making the disputed transfers.

As to tract 4 the court held that the will probated after William Kamp's death was constructive notice to Miller so that he was not a *bona fide* purchaser of that tract. It also held, however, that despite the invalidity of the original conveyance from Helena Kamp to Miller, defendants Iben, Horstman, Brock and Storts hold good title to tract 4 by virtue of seven years' payment of taxes with color of title and possession. Ill. Rev. Stat. 1957, chap. 83, par. 6.

The defendants contend that the evidence was insufcient to show that the will was executed pursuant to a contract between the testators. As we pointed out in *Bonczkowski* v. *Kucharski,* 13 Ill.2d 443, 453, the burden is upon the party who asserts such a contract to establish it by clear, convincing and satisfactory evidence. (*Cf.* Sparks, Contracts to Make Wills, p. 24.) Here there is no evidence of a contract except as it appears from the terms of the will itself and from the circumstances of the testators. But we are of the opinion that the trial court properly found that a contract existed. The testators were husband and wife who made identical reciprocal provisions for each other in a single instrument; each gave up the right of absolute ownership of the real estate held in joint tenancy which would have followed upon the death of the other; William Kamp had children by a previous marriage, and the instrument appears to have been designed to insure that they would receive equal treatment with the children of the two testators; the property of both testators is treated as a common pool and the dispositions are made by both rather than by each of them individually. Each of these factors has been considered relevant in prior cases which determined that a joint and mutual will was executed pursuant to a contract. (*E.g. Bonczkowski* v. *Kucharski,* 13 Ill.2d 443; *In re Estate of Edwards,* 3 Ill.2d 116.) The evidence sustains the trial court's conclusion that a contract existed in this case.

Some of the defendants suggest that even if the will

embodies a contract, that contract does not apply to the four tracts of land held in joint tenancy, because title to that property did not pass to Helena Kamp under the will, but by operation of law. *Bonczkowski* v. *Kucharski,* 13 Ill.2d 443, establishes that land held in joint tenancy may be the subject of a contract embraced in a joint and mutual will. The language of the instrument and the circumstances of the parties in this case show that they intended to include their jointly owned property in the contract. The will disposes of "all" of the property that the testators "now own or shall hereafter acquire" to the survivor for "the term of his or her natural life." It then provides for sale of the property and distribution of the proceeds among the six surviving children of William Kamp and the children of his deceased child. The apparent purpose of this agreement —to restrict the survivor to a life interest and ensure that all of William Kamp's descendants would share in his property and that of his wife—would be largely nullified if the agreement did not embrace the property held in joint tenancy, because this property constituted most of the testators' wealth. We see no basis for an interpretation that would exclude the jointly owned property.

The defendants' third contention is that even if there was a contract which applied to all of the Kamps' property, including that held in joint tenancy, the *inter vivos* transfers made by Helena Kamp were nevertheless effective. They emphasize that the agreement did not expressly prohibit *inter vivos* conveyances by the survivor and that it did not specifically describe the real property to which it applied. They conclude, therefore, that only those sales and gifts made "with a furtive intent," or an intent to circumvent the contract, should be invalid.

So far as the gifts that Helena Kamp made to her daughters, Alma Heath and Helen Willcott are concerned, we are of the opinion that they must fail even under the standard suggested by the defendants. Each of those gifts

enabled Helena's daughters to obtain possession and enjoyment of property at her death to the exclusion of the other legatees. The deed to tract 1, delivered in 1937, was not recorded, and Helena's daughters took possession of the residence on tract 1 and the furnishings therein only at their mother's death. They received and cashed the government bonds at the same time. The will provided that at the death of the surviving testator, William Kamp's descendants by his former marriage would share equally with the two daughters of Helena Kamp, and the necessary consequence of these transactions was to benefit Helena's two daughters in a manner that circumvents the plan of the joint and mutual will.

We turn, then, to a consideration of this contention as it applies to the sale of tract 4 and the lease of tracts 2 and 3 by Helena Kamp during her lifetime. Our problem is to determine from the terms of the will and the surrounding circumstances what these testators intended. Their agreement included "all" of their property. And it is unrealistic, we think, to suggest that they would have supposed that they were saying anything different if the legal descriptions of their property had been spelled out in the will. We are not aware of any case involving an agreement like this one in which the presence or absence of a specific legal description of real estate was regarded as a significant indication of intention in determining whether *inter vivos* conveyances of real property were permitted or prohibited.

As we have pointed out, the four tracts held in joint tenancy constituted the bulk of the testators' assets. To accomplish what appears to have been their dominant purpose, the Kamps agreed to limit the interest of the survivor to a life interest, and that limitation is itself inconsistent with a power to alienate by *inter vivos* conveyance. There are other indications of intention that point the same way. The will directs that after the death of the survivor, the executors are to sell "all of our real property," but only

when "they are able to obtain a fair and reasonable price therefor." In the interim the executors are to rent the property, pay taxes and insurance premiums and to keep the property in good repair. These detailed provisions for sale after death emphasize that *inter vivos* dispositions of the real estate were not contemplated. In our opinion, therefore, the trial court properly held that the sale of tract 4 and the lease of tracts 2 and 3, in so far as it extended beyond the life of Helena Kamp, violated the provisions of the contract.

As to tract 4, however, the trial court found that the present record owners and their predecessors have been in actual possession under claim and color of title since 1937, and have paid the taxes assessed against the property for the years 1938 to 1957, inclusive. This finding is not disputed. Nothing in the record suggests that their claims of title were not made in good faith; that they may have had constructive notice, or even actual notice, of the plaintiffs' claim is not material. (*Dunlavy* v. *Lowrie,* 372 Ill. 622; *Simpson* v. *Manson,* 345 Ill. 543.) The trial court therefore held that under section 6 of the Limitations Act (Ill. Rev. Stat. 1959, chap. 83, par. 6,) they are the legal owners of tract 4.

The plaintiffs attack this determination on the ground that the defendants' possession was not adverse, so far as they are concerned, until the death of Helena Kamp, and that the seven-year statutory period did not begin to run until that time. They rely upon the statute, (Ill. Rev. Stat. 1959, chap. 83, par. 3) which fixes the time when a right of entry or the right to recover possession of land is deemed to accrue, and they cite several of the many cases which hold that possession of a life tenant, or those claiming under him, is not adverse to a remainderman until the termination of the life estate. *E.g., Beasley* v. *Beasley,* 404 Ill. 225; *Mettler* v. *Miller,* 129 Ill. 630; *Higgins* v. *Crosby,* 40 Ill. 260.

The difficulty with this position is that the statute upon which the plaintiffs rely does not relate to the cause of action that they assert. Their claim is as third-party beneficiaries of the contract between William and Helena Kamp. As we have held, they are entitled to specific enforcement of that contract in a court of equity, and it is in that light that the inception of their right to sue must be determined. At the time of the conveyance of tract 4, the plaintiffs could have challenged the conveyance on the ground that they now assert,—that it was a breach of the agreement to retain all of the real estate for the benefit of William Kamp's children and grandchildren. While they could not then have obtained possession of the property for themselves, they were then entitled to subject its possession and ownership to their contractual rights. We see no reason why the seven-year statutory period of limitation should not run from that time. *Cf. Oehmich* v. *Hedstrom,* 251 Ill. 481; *Waterman Hall* v. *Waterman,* 220 Ill. 569.

For the reasons stated above the decree of the trial court is affirmed.

*Decree affirmed.*