**Grace S. PYLE, a disabled adult, by Carolyn STRAUB, Successor Guardian of her Estate, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 84–2242.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1985.

Decided July 10, 1985.

**1142**

R.E. Dehen, Springfield, Ill., for plaintiff-appellee.

Patricia A. Willing, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Before CUMMINGS, Chief Judge, and POSNER and FLAUM, Circuit Judges.

CUMMINGS, Chief Judge.

Grace S. Pyle, through her successor guardian, Carolyn Straub, brought suit to recover federal gift tax in the amount of $315,298.00, plus interest and costs. The court below granted Pyle's summary judgment motion. 581 F.Supp. 252 (C.D.Ill. 1984). We reverse.

## I

On November 29, 1973, taxpayer and her husband executed a joint and mutual will containing the following two clauses:

> Third: I, Homer V. Pyle, hereby will, give, devise and bequeath all of my property, both personal and real or mixed, and wheresoever situated, to my wife, Grace S. Pyle, in fee simple.

> Fourth: I, Grace S. Pyle, hereby will, give, devise and bequeath unto my husband, Homer V. Pyle, all of my property, both personal, real or mixed, and wheresoever situated, to be his in fee simple.

Subsequent paragraphs specified in great detail the disposition that the couple desired of their property at the death of the survivor of them.

Homer died on March 27, 1978. In December of that year, while Grace was hospitalized,[1] her attorney filed a gift tax return and eventually paid taxes and interest of $315,298.00 on all of Grace's property. Evidently he assumed that the couple's will functioned to make a valid gift from Grace to the named beneficiaries. Grace now challenges this payment as erroneous and seeks a refund.

■ Grace, along with other parties, filed suit in state court for judicial construction of her and her husband's will. On January 10, 1981, the Illinois Circuit Court of the Seventh Judicial Circuit rendered its opinion. The court construed the will as a joint and mutual will. Illinois courts interpret such arrangements to give the survivor the equivalent of a life estate in the couple's assets. See, *e.g., First United Presbyterian Church v. Christen-*

---

1. Grace was born March 13, 1897, and is now 88 years old. She evidently has been senile for a number of years, predating her husband's death. See App. 4.

*son*, 64 Ill.2d 491, 1 Ill.Dec. 344, 356 N.E.2d 532 (1976). The contract not to revoke that is held to underlie mutual wills renders them irrevocable, by which statement courts mean that the beneficiaries of the joint and mutual will can sue beneficiaries under any subsequent will for specific performance of the mutual will's provisions. *Tontz v. Heath*, 20 Ill.2d 286, 292–294, 170 N.E.2d 153 (1960); *Freese v. Freese*, 49 Ill.App.3d 1041, 1043–1044, 7 Ill.Dec. 692, 364 N.E.2d 983 (4th Dist.1977).[2] The court found in the will that Grace and Homer intended "to provide for the needs of the surviving spouse, whomever it might have been, for his or her lifetime, but upon the death of the survivor, a specified plan of disposition was established." App. 31. In order to effect this specified plan, the state court determined that Grace was bound not only to convey whatever happened to remain at her death according to the joint and mutual will's provisions but also to conserve the corpus of the property. Consequently, the court prohibited her "from alienating all of the property and disposing of the same without restriction except insofar as it is necessary to utilize any or all of the assets for her health, support, comfort or maintenance." *Id*. The court then held that Grace

> has fee simple title to any and all property standing in the sole name of Homer V. Pyle at the time of his death subject to the contract contained in the Joint and Mutual Will. Said contract restricts Grace S. Pyle from alienating, transferring, conveying or disposing of any and all of her property howsoever acquired with the exception that she or her legal representatives may utilize the income and any corpus necessary for her health, support, comfort and maintenance requirements.

*Id*. Finally, the court authorized Grace or her legal representatives to sell any of the assets "for investments of equal or more value," with the exception of two parcels of real estate that had been specifically devised. *Id*.

The district court accepted the government's position that the will effected a gift from Grace of her and her husband's entire property to the will's named beneficiaries. But because the district court interpreted the state court's opinion, especially its references to Grace's ability to invade the corpus for her comfort, to mean that her power to invade was not limited by an ascertainable standard, it determined that her gift to the remaindermen was incomplete and therefore not subject to federal gift tax. According to the lower court, the federal government would have to wait until Grace's death and then impose estate tax on the property. We disagree.

## II

The issue to be decided is whether the beneficiaries' interests in Homer's and Grace's property was sufficiently certain upon his death to constitute a completed gift from Grace to the remaindermen at the time of Homer's death. The certainty of the gift (and the concomitant ability to value it for taxation purposes) depends on whether Grace's powers to dispose of the property were unlimited or constrained by some ascertainable standard. Illinois law determines the latter question. *Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 1035 (1940) (powers of appointment); *Brantingham v. United States*, 631 F.2d 542, 545 (7th Cir.1980) (same).

■ The will stated that Homer's property would pass to Grace "in fee simple," but this language is only the beginning of the inquiry. The emphasis plaintiff places thereon is misguided. The Illinois Supreme Court has made clear on previous occasions that general words such as "in fee simple" are not determinative when followed by

**2.** A testator could still execute a later will that a probate court could admit to probate under the new summary procedures effective in Illinois, but that new will would be subject to later attack on the ground that a previous joint and mutual will that became irrevocable due to the first party's decease barred the later will from having any effect. See *In re Estate of Gaglione*, 97 Ill.2d 408, 73 Ill.Dec. 567, 454 N.E.2d 664 (1983).

subsequent clauses that confer the property on another at the death of the first taker. In such a situation, the instrument in question creates no more than a life estate in favor of the first person named. *First United Presbyterian Church v. Christenson*, 64 Ill.2d at 498–499, 1 Ill.Dec. 344, 356 N.E.2d 532 (joint and mutual will); *Griffin v. Griffin*, 29 Ill.2d 354, 357–358, 194 N.E.2d 641 (1963) (successive life estates in will). Of critical importance is that the testators' intent "be determined from a reading of the entire will and not from a single word, phrase or section." *First United Presbyterian Church v. Christenson*, 64 Ill.2d at 498, 1 Ill.Dec. 344, 356 N.E.2d 532.

█ In the case at bar we are fortunate to have the guidance of an Illinois state court's interpretation of the will at issue. The court did not specifically address the question before us, but a close reading of the entire opinion indicates the correct result. Although the court, as had the will itself, described Grace's interest as being held in fee simple, the court imposed significant constraints on her liberty to dispose of the property. While entitled to the income from the property, she may invade the corpus only for her "health, support, comfort and maintenance." The court permitted her to sell some of the assets, but only in order to acquire "investments of equal or more value." Even then certain parcels of real estate may not be disposed of at all unless Grace has consumed all of the other assets first and requires the proceeds of the real estate for her health, support, comfort and maintenance. Although Grace has in fact sold, mortgaged, and used some of the property at issue, she has done so only with the court's approval. While her requesting permission in and of itself is not dispositive, the state court's recognition of the limits imposed by her contractual obligation not to revoke illustrates the extent to which her ability to alienate the property is constrained. These stringent limits reinforce the inference that Grace may not freely dissipate the property

so that an ascertainable standard indeed limits her interest.

Unfortunately, other than the judicial construction of the will by the state court, little case law on the issue exists. Plaintiff argues first that the joint and mutual will, as far as its beneficiaries are concerned, was contractual and not dispositive. While they might have a right as third-party beneficiaries to enforce the underlying contract not to revoke, their interest is still both undeterminable and unvested until Grace's death, at which time the right to the property will vest in them. In support of this argument plaintiff cites *Estate of Lidbury*, 84 T.C. 146 No. 10 (1985), purporting to apply Illinois law. In *Lidbury*, the Tax Court held that a joint and mutual will did not effect a gift from the widower to the will's beneficiaries at the wife's death and would not do so until the husband died.

The *Lidbury* decision is not probative for several reasons. To begin, the Tax Court's characterization of the will as being joint and mutual was in error. The will was joint, because it was a single document acting as the will for two different people, and it contained reciprocal provisions. But it was not mutual in the legal sense of the word, because the couple had not executed the will pursuant to a contract not to revoke. *Id.* at 155. The contract not to revoke underlying joint and mutual wills is the feature rendering them irrevocable and conferring on the beneficiaries thereunder their right to specific performance. In addition, the will in *Lidbury* had not even been admitted to probate when Mrs. Lidbury had died, so that it was not effective as a will. *Id.* at 154. Consequently it was not effective as either a will or as a contract to dispose of the property. In the instant situation the will was admitted to probate at Homer's death. The state court specifically found that it had been executed pursuant to a contract between Homer and Grace. Consequently, it was effective both as Homer's will and as a contract to dispose of the property, and the terms of the

contract are not such that Grace is afforded unlimited discretion over the property.[3]

The Tax Court in *Lidbury* did state in dicta that even if "the will was [*sic* ] an irrevocable contract upon Mrs. Lidbury's death, it would not result in the transfer of a present interest in the property of the survivor. The effect is contractual, not dispositive." *Id.* at 155. As noted, the will in that case still had not been admitted to probate, so that it could not have been dispositive, unlike the case at bar. Furthermore, the *Lidbury* court cited as support *S.E. Brown v. Commissioner,* 52 T.C. 50 (1969). Yet that case involved a completely different will. First, the survivor retained the right to dispose of his property as he wished, being limited contractually only in his disposition of the property that had been his wife's. *Id.* at 66. Grace, on the other hand, is limited in her disposal of both her husband's and her own property. Second, the court interpreted the will to mean that the survivor was required to give to the beneficiaries of the joint and mutual will only whatever happened to remain at his death; no obligation to make a present transfer of a remainder interest existed. *Id.* at 65. Grace's responsibilities vis-a-vis the property are broader; she must conserve the property for the beneficiaries in order to fulfill the terms of the contract binding her.

Plaintiff next argues that Grace's discretion to dispose of the property was not limited by an ascertainable standard so that imposition of the gift tax was in error. The district court placed great reliance on the Illinois Supreme Court opinion of *Rock Island Bank & Trust Co. v. Rhoads,* 353 Ill. 131, 187 N.E. 139 (1933). The court there held that the phrase "comfort and satisfaction" gave the widow a life estate with an unlimited power of disposal. The court so held, however, only because the word "satisfaction" conferred unlimited discretion on the widow. *Id.* at 141–142, 187 N.E. 139. The court declared that "[h]ad this clause provided only for her

comfort, it cannot be doubted that such would be a limitation on her power of disposal to such of the corpus as she should determine necessary to maintain her in the station of life to which she was accustomed." *Id.* at 142, 187 N.E. 139. Consequently the district court's reference to this opinion to establish that Grace also had an unlimited power of disposal over the property is greatly misplaced. Not only did the will itself not use the word "comfort," that language appearing only in the state court interpretation of the will, but the Illinois Supreme Court itself indicated that the word "comfort" would indeed create an ascertainable standard. As long as Grace's discretion is limited in some definable way—and according to the state court's interpretation of the will her power is so limited—then it can be measured. Once measured, it is subtracted from the total value of the property and tax is imposed only on the remainder. In fact, the gift tax return indicates that Grace's lawyer did in fact account for her interest in this way. App. 17.

Plaintiff's argument also focuses on the word "comfort" in the state court opinion, but discounts the probative value of the *Rock Island* decision. Plaintiff refers instead to federal tax regulations indicating that "comfort" may not be an ascertainable standard. See 26 C.F.R. § 25.2511–1(g)(2) (1984) (gift tax) ("a power to distribute corpus for the pleasure, desire, or happiness of a beneficiary" is not an ascertainable standard); *id.* at § 20.2041–1(c)(2) (powers of appointment) ("power to use the property for the comfort, welfare, or happiness of the holder of the power" is not an ascertainable standard). But the regulations speak in general terms only, and the guiding factor in determining whether Grace is limited by an ascertainable standard is Illinois law. As *Rock Island Bank & Trust Co. v. Rhoads, supra,* illustrates, "comfort" is indeed an ascertainable stan-

---

**3.** Of course the document will not become effective as Grace's will until she dies. The point is that the will, as Homer's will, purports to dispose of all the property of the couple. See *infra*

pp. 1146–1147. The will directs Grace not only to distribute whatever is left in a certain way but also to restrict her use of the property so as to convey the bulk to the named beneficiaries.

dard under Illinois law. It refers to maintaining someone in the station of life to which that person is accustomed. Since Grace's station in life is known, the standard is measurable and hence ascertainable. Moreover, the gift tax regulations, which of course are the most relevant of those plaintiff cites, reiterate that "[t]he entire context of a provision of [an instrument] granting a power must be considered in determining whether the power is limited by a reasonably definite standard." *Id.* at § 25.2511–1(g)(2). The state court's linking the word "comfort" to the words "health, support, and maintenance" in its construction of the will, while imposing strict limits on Grace's power to alienate her property, convinces us that the will limited her discretion by an ascertainable standard.[4]

Other case law relied upon by plaintiff or by the district court is not persuasive. Cases considering whether the surviving party to a joint and mutual will takes through the will, so that inheritance tax is owed, or under the contract supporting the will, so that the inheritance tax is inapplicable, and deciding that the former is the case, are inapposite. *In re Estate of Murphy*, 38 Ill.2d 76, 78–79, 230 N.E.2d 266 (1967). Cf. *In re Estate of Alter*, 49 Ill.2d 386, 388–389, 275 N.E.2d 364 (1971) (inheritance tax imposed on property that nursing home owner received through will executed pursuant to contract providing for decedent's maintenance for life in said home). No one disputes that Grace received Homer's property through his will. The only question is whether the requirements of

that will render Grace's interest sufficiently limited to treat the gift to the beneficiaries as complete.[5] *Nielsen v. Duyvejonck*, 94 Ill.App.2d 224, 231, 236 N.E.2d 743 (3d Dist.1968), concerned a life tenant with an unlimited right to dispose and consume of the corpus for his "comfort and support," at his own discretion. This power to dispose of the property however the survivor desires, with the only duty to the remaindermen being to convey whatever is left as the joint and mutual will directs, is a critical distinction rendering *Nielsen* more similar to *Rock Island Bank & Trust Co. v. Rhoads, supra,* than to the instant situation. See also *Nettz v. Phillips*, 202 F.Supp. 270, 272 (S.D.Ia.1962) (will gave spouse right to dispose of property without any limitations); *Newman v. United States*, 176 F.Supp. 364, 366 (S.D.Ill.1959) (same). The treatises plaintiff cites similarly concern the situation where the survivor takes the property without limitations on its use or disposal, being obligated only to devise whatever happens to remain at death to certain designated beneficiaries. Br. at 5–6.

Nor does *Hambleton v. Commissioner*, 60 T.C. 558 (1973), support plaintiff's position. Quite the contrary is true. Although a joint and mutual will was at issue in *Hambleton*, the court held that that will did not purport to restrict the surviving spouse's disposition of her property. Rather it obligated her only to convey whatever remained at her death to the beneficiaries named in the joint will. Because the amount of property that eventually would

**4.** If Grace's attorney firmly believed that the trial court had interpreted the will to allow Grace an unlimited power to dispose of the property, as he now argues, then counsel would have been better advised to seek clarification on the point from the Illinois court before filing for a tax refund. The ambiguity created by the strict guidelines the Illinois court imposed on Grace's power to alienate the property can be resolved only by concluding that the state court did not interpret the will as broadly as plaintiff now contends.

**5.** Both of these cases also seem to hold that the retention of an income interest would preclude gift tax. *In re Estate of Murphy*, 38 Ill.2d at 79, 230 N.E.2d 266; *In re Estate of Alter*, 49 Ill.2d at 389, 275 N.E.2d 364. The cases the Supreme

Court of Illinois cites in support, however, address only the issue of the donor's control—if the donor has retained no power to alter the terms of the gift or to revoke it in any way, then the transfer is taxable as a gift, otherwise it is not. See *People v. Schallerer*, 12 Ill.2d 240, 245, 145 N.E.2d 585 (1957); *People v. McCormick*, 327 Ill. 547, 158 N.E. 861 (1927). Grace's lack of control to alter the terms of the bequests under the couple's joint and mutual will renders the gift complete under Illinois law. Consequently *Estate of Sanford v. Commissioner*, 308 U.S. 39, 43, 60 S.Ct. 51, 55, 84 L.Ed. 20, which concerns a gift that is incomplete because the donor retained the power to modify its terms or ultimate beneficiaries, provides plaintiff no support because Grace lacks such power.

be given to the third parties was indefinite, no gift tax could be imposed. The Tax Court specifically distinguished the situation where the joint and mutual will purports to dispose of the entire estate at the death of the first of the couple to die. In this situation "it appears to be settled that the surviving spouse makes a taxable gift of the remainder interest at the death of the testator first to die, at least to the extent that the value of the remainder exceeds the value of the life estate obtained in the decedent's share of the * * * property." *Id.* at 567. This latter case is precisely the situation that Homer's and Grace's will set up. Because the will purports to dispose of all of the couple's property and obligates Grace to convey the entire estate in a detailed, specified manner—rather than being free to dissipate the property and transfer only whatever may remain at her death—she is deemed to have made a taxable gift of the remainder interest at the time of Homer's death. In the last analysis, *Hambleton* strongly supports the government's position.

While our research has disclosed several cases considering the rights of beneficiaries under a joint and mutual will when the surviving spouse attempts to transfer the willed property to others, none of these cases considers the problem of taxation. See, *e.g., First United Presbyterian Church v. Christenson, supra; Tontz v. Heath, supra; Freese v. Freese, supra.* The most relevant is *First United Presbyterian Church v. Christenson,* in which the Supreme Court of Illinois stated it did not accept the beneficiary plaintiff's argument that it held a vested remainder subject to the widow's life estate. 64 Ill.2d at 496–497, 1 Ill.Dec. 344, 356 N.E.2d 532. This statement is troubling, until placed in the context of what the court actually held. The plaintiff had argued that it held a fee simple interest and evidently believed that the widow could not transfer even her life estate interest. The court rejected this broad argument, holding that the wife could indeed convey her life estate interest, although any transfer she made would be subject to the church's remainder interest. *Id.* at 499–500, 1 Ill.Dec. 344, 356 N.E.2d

532. Our decision today does not conflict with this holding. Grace certainly may convey her right to income to third parties. She may also transfer any of the property that is not specifically devised for investments of equal or greater value. What she may not do is dispose of the corpus for any reason other than to meet her requirements for her health, support, comfort and maintenance, which power is ascertainable under Illinois law. Consequently her ability to alienate this property is restricted.

In summary, in order to determine what sort of interest Grace received, the will itself and any relevant state law are controlling. Our survey of Illinois cases convinces us that Grace received a life estate limited by an ascertainable standard, rendering the remainder interests in the will's beneficiaries subject to federal gift tax. The judgment of the district court refunding $315,298.00 in federal gift tax (plus interest and costs) to taxpayer Grace Pyle is reversed, costs to the United States.