ESTATE OF William A. LIDBURY, Deceased, Harry Lidbury, Executor, Petitioner-Appellee, Cross-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant, Cross-Appellee.

Nos. 85–1779, 85–1999.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1986.

Decided Sept. 3, 1986.

Robert V. Lewis, Chapman & Cutler, Chicago, Ill., for petitioner.

Robert A. Berntstein, Tax Division, Dept. of Justice, Washington, D.C., for respondent.

Before CUMMINGS, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

CUMMINGS, Chief Judge.

The Commissioner of Internal Revenue (Commissioner) appeals from the Tax Court's determination that the estate of

William Lidbury is not liable for gift tax. The estate appeals in the alternative from the Tax Court's estate tax assessment. These two cases have been consolidated for purposes of appeal.[1] Jurisdiction is found in 26 U.S.C. § 7482. We affirm the gift tax decision of the Tax Court and remand the estate tax decision for additional calculations.

Statement of Case

The Commissioner determined deficiencies in federal gift taxes and estate taxes against William Lidbury, decedent. The executor of William's estate (his son, Harry Lidbury) petitioned the Tax Court for a redetermination of the two assessments. The Tax Court entered an opinion and decision adverse to the Commissioner's gift tax position on February 5, 1985. On May 3, 1985, the Commissioner filed its notice of appeal. On June 7, 1985, the executor filed a notice of appeal from the estate tax decision. This Court ordered the two cases consolidated for briefing and argument on June 20, 1985.

The facts are undisputed. In 1951, William and Rose Lidbury (husband and wife) executed a joint and mutual will. In pertinent part, the will purported to dispose of their joint property (consisting primarily of a farm) by giving to the surviving spouse a life estate and passing all the property equally to their four children at the second spouse's death. Harry Lidbury was named executor of the survivor's estate. Specifically, in pertinent part the will provided:

SIXTH: We make this joint will in pursuance of a contract and agreement between us for the purpose of disposing of all of the property which we now own, or may hereafter acquire, either jointly or severally, in accordance with a general plan agreed upon between us. In making this, our Last Will and Testament we, and each of us, do covenant and agree that upon the death of one of us, the survivor will not in any manner directly or indirectly dispose of his or her property to the end that the general plan of

distribution, as provided herein, shall be altered and changed in any form whatsoever; and we and each of us do further covenant and agree that the survivor of us shall hold and manage the property which he or she may own outright and of which he or she may have the use, by reason of this, our Last Will and Testament, in a careful and prudent manner, so as not to dissipate any of said property.

Rose died in 1964. The 1951 will was not admitted to probate at this time, apparently forgotten. Rose's estate for estate tax purposes consisted of her one-half interest in property held with William as joint tenants. William did not file a gift tax return in 1964. At William's death in 1977 the 1951 will was admitted to probate. The Commissioner asserted a gift tax deficiency for 1964, reasoning that the 1951 will imposed contractual obligations on William to make gifts of valuable property interests to his children.

The Tax Court held that the 1951 document was not a joint and mutual will and that no contract existed to limit William's right of disposition of the property at the time of Rose's death. In the alternative, the Tax Court held that even if it were an irrevocable contract, it did not transfer a present interest in the property. Thus the Tax Court concluded that William was not liable for gift tax in 1964. The Tax Court ruled in the estate tax case that all of the 210-acre farm and proceeds from the sale of the 80-acre farm (in 1975) were included in William's gross estate. In the estate tax case the executor had argued that if gift tax liability were found, then only one-half of the jointly held property should have been taxed under § 2031 of the Internal Revenue Code. These appeals followed.

The consolidated issues on appeal are as follows. First, was the 1951 document a joint and mutual will and second, did it create contractual obligations on the surviving spouse? Third, if so, did the contract act to deprive the surviving spouse of

1. The gift tax case and the estate tax case were consolidated in the Tax Court for purposes of trial, briefing and opinion. The Tax Court opinion is officially reported at 84 T.C. 146 (1985).

significant control over the property? If gift tax liability is found, then the fourth issue is whether the value of William's gift should be reduced by the value of consideration from Rose and fifth, whether only 50% of the jointly owned property should be included in William's gross estate. In any event as a sixth issue, the executor asks this Court to remand to the Tax Court for Rule 155 calculations. We affirm the decisions of the Tax Court but remand for appropriate recalculations with respect to the estate tax decision.

I. Gift Tax Appeal

■ The Commissioner first argues that it was error for the Tax Court to rule that the document executed between William and Rose Lidbury was not a joint and mutual will. The Tax Court reasoned that because the 1951 will was not probated at the time of Rose's death in 1964, it was not a joint and mutual will. However, the document was a joint and mutual will under *Curry v. Cotton*, 356 Ill. 538, 543, 191 N.E. 307 (1934). The Illinois Supreme Court in *Curry* defined a joint and mutual will as

> a written instrument executed and published by two or more persons disposing of the property, or some part of the property, owned jointly or in common by them or in severalty by them. On the death of the testator first dying it is subject to record and probate as his will, and on the death of the surviving testator it is subject to probate as his will. A joint will may or may not be mutual or reciprocal. Mutual or reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal and by which each testator makes testamentary disposition in favor of the other. * * * A will that is both joint and reciprocal is an instrument

executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other.

*Id.* It is not necessary that the will be admitted into probate, because the issue here is whether the document was a valid contract. The Commissioner does not seek to enforce the will, only the contract.[2]

The issue before this Court is whether the 1951 will was a contract that acted to limit the decedent's right to dispose of property at the time of his wife's death. To resolve the issue we must first determine whether the document was a contract and if so then decide whether the decedent completed a gift to his children in 1964. We affirm the Tax Court's holding that no gift tax liability attached in 1964 but on the ground that the terms of the contract did not so restrict the decedent's ability to control his property that a gift was completed.

A. [2] The Tax Court held that in order for the will to be a contract it must have been irrevocable at the time of Rose's death. The Tax Court also noted that the facts that the will was forgotten at the time of Rose's death and that it merely devised the estate to the couple's children were further evidence that the will was not a contract. The Commissioner claims that the court erred in failing to examine the appropriate factors under Illinois law to determine whether an irrevocable contract for disposition existed.[3]

■ Once a joint and mutual will is properly executed, there is a presumption that it was executed pursuant to a contract between the testators. *Estate of Gaglione*, 97 Ill.2d 408, 416, 73 Ill.Dec. 567, 454 N.E.2d 664 (1983); *Estate of Edwards*, 3 Ill.2d 116, 120–122, 120 N.E.2d 10 (1954).

**2.** In *Pyle v. United States*, 766 F.2d 1141, 1144–1145 (7th Cir.1985) certiorari denied, —— U.S. ——, 106 S.Ct. 1197, 89 L.Ed.2d 311, this Court in discussing the Tax Court opinion in *Lidbury* stated that the document was not a will or a contract. However, *Pyle* only restated the Tax Court's reasoning while distinguishing the facts before it. It did not purport to engage in a legal analysis of the *Lidbury* opinion.

**3.** Where federal tax liability turns upon the character of a property interest, federal courts are constrained to follow state law determinations of the interest in or right to such property. *Pyle v. United States*, 766 F.2d 1141, 1143 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 1197, 89 L.Ed.2d 311.

In addition to the presumption, Illinois courts have examined the language of the will for evidence of an intent to create a contract. Relevant factors include: (1) the label given to the will; (2) the use of contractual terms; (3) the use of common plural terms; (4) the pooling of the testators' property interests; (5) a common dispositive scheme; and (6) the reciprocal surrender of valuable property interests. See *Bonczkowski v. Kucharski*, 13 Ill.2d 443, 455, 150 N.E.2d 144 (1958); *Estate of Edwards*, 3 Ill.2d 116, 123, 120 N.E.2d 10 (1954); *Tontz v. Heath*, 20 Ill.2d 286, 291, 170 N.E.2d 153 (1960). All of these factors are present in the Lidburys' will. The will is designated as a joint and mutual will on the document. In the sixth paragraph, the testators state that the will was made "in pursuance of a contract and agreement" between them and they "covenant" to perform certain obligations under the will. Throughout the will the Lidburys refer to themselves in the plural (we, our, us). Furthermore, William and Rose disposed of their property (real and personal) in favor of each other. These interests were also pooled into one joint fund that in accordance with a common dispositive scheme was disposed of in equal shares to their children. In addition, the testators included their jointly owned property in the will, which restricted the surviving spouse's rights in the property upon the death of one of the spouses.[4] See *First United Presbyterian Church v. Christenson*, 64 Ill.2d 491, 1 Ill.Dec. 344, 356 N.E.2d 532 (1976).

The combination of the language of the will and the presumption accorded to joint and mutual wills is sufficient to provide the requisite clear and convincing evidence of a contract, see *Bonczkowski v. Kucharski*, 13 Ill.2d 443, 453, 150 N.E.2d 144 (1958), despite the fact that the will was apparently forgotten at the time of Rose's death.

Similarly, the fact that the will made no unusual bequests is not enough to overcome the other evidence of a contract. The Tax Court also asserted that the contract was not dispositive because the will was not irrevocable. It is true that the surviving testator of a joint and mutual will may revoke that will at any time prior to his or her death and the later will may be admitted to probate. *Estate of Gaglione*, 97 Ill.2d 408, 73 Ill.Dec. 567, 454 N.E.2d 664 (1983). But this does not change the contractual nature of the will and the beneficiaries may sue in equity to enforce the original will. *Pyle*, 766 F.2d at 1143.

B. Next we must decide if by operation of the joint and mutual will a gift was made to the Lidbury's children at the time of Rose's death. The Commissioner argues that the terms of the will sufficiently restricted William's power to dispose of the property so as to constitute a gift. The executor maintains that the Tax Court correctly ruled that there was no transfer of a present interest in the property of the survivor.

Section 2501(a)(1) of the Internal Revenue Code imposes a tax on property transferred by gift. 26 U.S.C. § 2501(a)(1). The Treasury Regulations define a gift as any gratuitous transfer of a property right. 26 C.F.R. § 25.2511–1(c). Whenever property is exchanged for less than adequate and full consideration the gift tax is imposed. *Commissioner v. Wemyss*, 324 U.S. 303, 306, 65 S.Ct. 652, 654, 89 L.Ed. 958. Liability for the gift tax is triggered when "the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." 26 C.F.R. § 25.2511–2(b). The extent of power that William had to control or dispose of his property is crucial. An exami-

---

**4.** Although a clause in the will purports to give the surviving spouse only a life interest in the jointly owned property, such a clause cannot divest a joint tenant of his or her right in the property. *First United*, 64 Ill.2d at 497, 1 Ill.Dec. 344, 356 N.E.2d 532. The jointly held property passes outside the will by operation of law. *Id;*

see *Pyle v. United States*, 766 F.2d 1141, 1145 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 1197, 89 L.Ed.2d 311. However, the jointly owned real estate can be subject to a contractual agreement in a will enforceable by a court of equity. 64 Ill.2d at 497, 1 Ill.Dec. 344, 356 N.E.2d 532.

nation of the will as a whole reveals only slight restrictions on William's power, so we affirm.

■ First, under the Third Article William was not liable for waste. Although the will required him to manage the property carefully, it exempted him from liability if he were to greatly diminish its value. Similarly, the First Article of the will makes the property subject to William's debts, funeral expenses, and estate taxes. This provision allowed William to encumber the property freely. Additionally, according to the Fourth Article the only property that passed to the beneficiaries was whatever property existed at the time of William's death. The testators expected that, whoever the survivor, he or she was to use the property freely.

The only restrictions imposed on the survivor were that (1) the property be managed carefully and (2) that the property be disposed of "to the end that the general plan of distribution ... shall [not] be altered and changed in any form whatsoever." The will's general plan of disposition is the equal division of the property among the four children. As long as William did not attempt to circumvent that scheme, he was free to use the property as he wished. For example, under the terms of this will, William could not sell part of the farm to buy an expensive sports care and give it to a new woman friend, but he could conceivably use the proceeds to buy a sports car for himself. Likewise he could not give or sell the farm to a favorite child, but he could sell the farm and use the proceeds himself or divide them equally among his children. Because the joint and mutual will required only that William manage the property carefully and dispose of it according to the general plan of distribution, there was no completed gift at the time of Rose's death.

*Pyle v. United States*, 766 F.2d 1141 (7th Cir.1985), certiorari denied, —— U.S. ——,

106 S.Ct. 1197, 89 L.Ed.2d 311, is factually distinguishable because the joint and mutual will at issue imposed numerous and severe restraints on the surviving spouse's ability to control the property. There the surviving spouse had filed suit in state court for judicial construction of her and her husband's will. The state court found from the will that the husband and wife intended to provide for the needs of the survivor subject to a specific dispositive plan. According to the state court, in order to effectuate this plan the widow was bound to conserve the corpus of the property. Consequently, she could invade the corpus only when necessary for her "health, support, comfort, or maintenance." All of the actions the widow took with respect to the property were done only with court approval. When the widow's estate later contested an imposition of gift tax in the year of her husband's death, this Court held that the limits imposed by her contractual obligations demonstrated the extent to which her ability to alienate the property was constrained.[5]

The Lidburys expressed no such restrictive intent in their will. William's discretion to use property was not limited in a similarly definable way. Rather, William was only to proceed cautiously and prudently in the overall management of the property and when it came to conveying the property he had only to think of the general scheme of distribution. Indeed, William acted according to that intent by selling part of the property and distributing some of the proceeds as gifts before he died. The contract executed by William and Rose allowed William to incur debts and alienate the property with only slight restrictions. Thus the amount of property to which the children would be eventually entitled was too uncertain and indefinite to impose a gift tax at the time of Rose's death in 1964. See *Hambleton v. Commissioner*, 60 T.C. 558 (1973).

**5.** Significant to the *Pyle* reasoning was the earlier state court proceeding that interpreted the will restrictively and imposed strict obligations on the widow. The *Pyle* court noted that if the attorney felt so strongly that his client had unlimited power under the will he should have appealed the state court ruling before filing for a tax refund. 766 F.2d at 1146 n. 4.

## II. Estate Appeal

Because we affirm the Tax Court ruling against the Commissioner in the gift tax case, there is no need to reach the merits of the executor's cross-appeal. However, in his brief as cross-appellant the executor requested that we remand the estate case to the Tax Court for recalculation. He requests the remand under Rule 155 of the Tax Court, Rules of Practice and Procedure of the United States Tax Court, 79 T.C. 1148 (1982), to take into account the erroneous inclusion of cash gifts in William's gross estate and to deduct attorney's fees and other expenses under 26 U.S.C. § 2053(a)(2). Thus we find it necessary to address the Commissioner's argument that we lack jurisdiction over the estate tax appeal. We disagree and uphold our jurisdiction over this appeal.

A. The Commissioner argues that the executor should have filed his appeal from the estate tax decision within 90 days as required by 26 U.S.C. § 7483. Section 7483 provides:

> Review of a decision of the Tax Court shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days after the decision of the Tax Court is entered. If a timely notice of appeal is filed by one party, any other party may take an appeal within 120 days after the decision of the Tax Court is entered.

The executor maintains that the 120–day filing period should apply because the two Tax Court decisions (the gift tax opinion and the estate tax opinion) are interdependent. The Commissioner sent to the estate two notices of deficiency, one for gift tax and the other for estate tax. The executor for the Lidbury estate, Harry Lidbury, filed two petitions for redetermination of tax liability in the Tax Court pursuant to Rule 34 of the Rules of Practice and Procedure of the United States Tax Court as amended, 71 T.C. 1186 (1979). The petitions were consolidated because they were

interrelated. If there was no gift tax assessed, then the property was properly taxed as part of the estate. If there was gift tax liability, then the estate would be credited for any gift tax paid. The Tax Court found for the executor that there was no gift tax liability and thus included the property in the estate for estate tax purposes. The Tax Court entered two separate opinions on February 5, 1985, to that effect.

Eighty-seven days later on May 3, 1985, the Commissioner appealed only from the gift tax decision. The notice of appeal was not mailed to the estate's executor until the 90th day on May 6, 1985. On June 3, 1985 (118th day), the executor mailed his notice of appeal of the estate tax decision. That notice was filed on June 7, 1985.[6]

The Commissioner's proposition borders on the incredulous. It would require the executor to file a notice of appeal "just in case" the Commissioner appealed. It is doubtful whether the executor, who prevailed below, could have appealed before the Commissioner appealed. *Perez v. Ledesma*, 401 U.S. 82, 87 n. 3, 91 S.Ct. 674, 678 n. 3, 27 L.Ed.2d 701 (a party who receives all of the relief she or he sought is not aggrieved by the judgment granting the relief and cannot appeal from it); *Hotel & Restaurant Employees & Bartenders Int'l Union Local 54 v. Danziger*, 709 F.2d 815 (3d Cir.1983), vacated on other grounds, 464 U.S. 990, 104 S.Ct. 3179, 82 L.Ed.2d 373; 9 J. Moore, Moore's Federal Practice ¶ 203.06, at 3–23. Although consolidated cases remain separate actions with separate parties, *Toledo, St. Louis & K.C.R. Co. v. Continental Trust Co.*, 95 F. 497, 506 (6th Cir.1899), certiorari denied, 176 U.S. 219, 20 S.Ct. 383, 44 L.Ed. 442, there is nothing in § 7483 to prevent the taxpayer of an interrelated and interdependent consolidated case from being considered "another party." To allow the Commissioner to postpone his appeal so that the taxpayer is effectively foreclosed

---

6. Though the notice of appeal was filed on the 122nd day, June 7, it was postmarked on the 118th day, June 3. Under 26 U.S.C. § 7502 timely mailing is timely filing. This the Commissioner concedes. Brief for the Commissioner as Appellee at 16 n. 10.

from protecting himself or herself from the chance of double taxation would possibly be a violation of due process.

The Ninth Circuit has addressed an analogous situation in *Estate of Lang*, 613 F.2d 770 (1980). In *Lang* one taxpayer sought to appeal from one of two docketed cases (estate tax and gift tax) in which the Tax Court had issued separate decisions. The Commissioner lost and appealed from the estate tax case on the 88th day of the 90–day appeal period. The estate then appealed the gift tax case, which it had lost, within the 120 days. The Ninth Circuit held that § 7483 should be construed to allow the estate the 120 days to appeal. Here, as in *Lang*, to deny the taxpayer the opportunity to appeal from (what could become) a double-taxation, "while permitting the Commissioner to pursue his appeal of the [gift] tax issues decided in the same opinion, would appear unjust." *Id.* at 771 n. 1.

The Commissioner attempts to distinguish *Lang* on the ground that the entry of two separate decisions by the Tax Court was unexpected. Although certainly an important factor in *Lang*, because the taxpayers were surprised that they could not simply cross-appeal when there were two separate decisions, this case need not turn on such a fact. Like *Lang*, these two tax cases are interdependent. And like *Lang*, these two cases have been consolidated and treated as one proceeding. Both decisions were announced together. Unlike *Lang*, here the taxpayer's theory prevailed in both the estate and gift tax decisions. There was absolutely no reason for the taxpayer to appeal until the Commissioner attempted to overturn the gift tax assessment. If the Commissioner won the gift tax appeal, *then* the estate tax assessment would be incorrect. Without the appeal there was no fear of double-taxation. The executor should be treated as "another party" in accordance with the second clause of § 7483 and allowed the 120 days. To hold otherwise would put taxpayers grappling with interrelated tax consequences at the mercy of the Commissioner.

B. Having concluded that we have jurisdiction over the executor's estate tax case appeal, and having received no objections from the Commissioner (see Brief for the Commissioner as Appellee at 23 n. 15), the estate tax case is remanded to the Tax Court for the appropriate calculations sought by the executor.

The opinion of the Tax Court in the gift tax case (No. 85–1779) is affirmed. The estate tax case (No. 85–1999) is remanded to the Tax Court for recalculation of the estate tax under Rule 155.